BOARD OF COUNTY COMMISSIONERS OF ST. LOUIS COUNTY *vs.* JULIA E. NETTLETON; SAME *vs.* MASON G. SMITH & another.

January 27, 1876.

Tax Law of 1874—Defence that Tax is Void.—In proceedings to enforce the payment of taxes, under the act of 1874, the owner of lands proceeded against may set up as a defence, and prove, that the tax is void for want of authority to levy it, and need not allege that he is prejudiced by such void tax, or that the same was partially, unfairly, or unequally assessed.

Taxes for County Purposes—Parol Evidence of Items of Gross Estimate for Roads.—An attempt by county commissioners, when making their estimate of the taxes necessary to be raised for county purposes, to set apart, as a separate and distinct fund, the amount estimated by them to be necessary for roads, will not affect the validity of the estimate, nor of the tax levy based on it. Where, in such estimate, there was entered in the records of the board a gross item of $8,000.00 as a county road fund, it is competent to prove by parol that in such gross item there was included an item of $4,000.00 for a particular road.

Same—Interest on County Railroad Bonds not Registered.—County commissioners may provide for paying the interest on county bonds issued to railroad companies, although such bonds have not been registered with the auditor of state, as provided in the act of March 6, 1871.

City of Duluth—Council cannot Levy Tax for Sinking Fund, except upon Report of Commissioners.—An act passed March 8, 1873, provides for the creation of a sinking fund for payment of the principal of the outstanding bonds of the city of Duluth; that the mayor, treasurer, and comptroller of the city shall be the board of commissioners of said fund; that it shall be their duty, on or before the first day of February in each year, to report to the common

council the amount of money necessary to be raised by taxation in that year to provide such fund, and that the common council shall thereupon cause such a tax to be levied. *Held,* that the common council had no authority to cause such a tax to be levied when the board of commissioners of the sinking fund had made no report of the amount necessary.

Same—Alteration of City Assessment by County Board must be Reported to Council.—The charter of the city of Duluth provides that the board of equalization of the county of St. Louis shall have no authority to abate, alter, or amend the city assessment of real and personal property, as returned by the city assessor, without first reporting the same for the action and approval of the common council of the city, who may approve, disapprove, or modify the action of said board. *Held,* that any alteration of the city assessment by the county board of equalization, without reporting the same to the common council, is void.

County Boards of Equalization—Adjournment of Session.—County boards of equalization, when they are met as appointed by law, must continue in session for the purpose of equalizing assessments on every business day during the week, if necessary for that purpose. An adjournment, except from day to day, is such an irregularity as will let in the defence provided in § 119 of the act of 1874, regulating the assessment and collection of taxes.

Proceedings in the district court for St. Louis county, under the tax law of 1874, to enforce collection of delinquent taxes for the year 1874 on real estate in that county. The defendants, owners of real estate in the city of Duluth, appeared and objected to the validity of the taxes on their respective parcels of land, whereupon the case was tried before *Stearns,* J., and by him certified to this court. The items of taxes objected to by defendants, the grounds of their objection, and the rulings of the district court thereon, are stated in the opinion.

*M. S. Stewart* and *W. K. Rogers* for plaintiff.

*Ensign & Cash* and *Albert N. Seip,* for defendants.

GILFILLAN, C. J. Proceedings under the act of 1874 to provide for the assessment and collection of taxes. The board of county commissioners for the county of St. Louis, in the year 1874, made up the amounts to be levied for county purposes, by the items, as set out in the record of their proceedings, as follows, to wit:

County general fund, $18,000.00; county poor fund, $8,000.00; county road fund, $8,000.00; railroad bond interest, $12,000.00.

As to the items for "county road fund" and "railroad bond interest," the defendants claim that such taxes were levied without authority of law, and were, therefore, invalid. It is contended by the county that the court has not jurisdiction to enquire whether the tax was levied without authority of law unless it be alleged in the answer that such levy "has resulted to the prejudice of the party objecting," and that the taxes "have been partially, unfairly, or unequally assessed."

It was the intent of the act of 1874 to require the owner of property to interpose, in these proceedings, every defence or objection to a sale of the lands for the taxes appearing on the list filed, which he may claim, so that all such defences or objections may be tried and disposed of, and a conclusive judgment, affirming the taxes and the right to sell for them, entered, and a good title passed to purchasers at the sale. The defence that the tax is void for want of authority to levy it does not come under § 119, which relates to those objections or defences that are based, not on want of authority to levy the tax, but on some omission to do, or irregularity in doing, the things required by the statute to be done in assessing or levying a tax otherwise valid. The court below ruled correctly on this point.

The items in the levy which are objected to are the county road fund, the railroad bond fund, and also an item, included in the list, for a sinking fund for the city of Duluth.

The objection to the item for county road fund is that the board of county commissioners have no authority to levy a road tax as such—that is, they have no authority to provide by taxation for a separate and distinct fund for roads and bridges. The statute designates all roads located by state or county authority as county roads, (Laws 1873, ch. 5, § 55,) and gives to the county commissioners general supervision over such roads, and gives them power to appropriate such sums of money from the county treasury as they think advisable for opening, vacating, resurveying, or otherwise

improving such roads, not exceeding in any one year the sum or ratio of $1,000.00 to each $500,000.00 of assessed valuation of real estate in such county. Additional sums may be appropriated to building bridges, and opening and repairing county roads, if ratified by a vote of the people, Section 56. Section 76, ch. 1, Laws 1874, provides that "the county commissioners shall, at their July session, annually determine on the amount to be raised for ordinary county purposes, for the support of the poor, and for interest and principal on the county debt." Section 79 of the same act provides that there shall be levied annually for "all county expenses of each of the several counties, other than for roads and bridges, and the payment of the interest and principal of the debts of the county, such rate as the commissioners of such county determine to be necessary, not exceeding ten mills on the dollar on the taxable property of the county."

The authority of the county commissioners to provide in the tax levy for such sums as, during the year, they are authorized and may find it necessary to appropriate from the county treasury for opening, vacating, resurveying, or otherwise improving county roads, cannot be doubted. Their authority to appropriate in advance, and at the time of making the estimate for the levy, any sum to such exclusive use—that is, to provide for such purpose a distinct and separate fund that cannot be used for any other purpose—is quite another thing. It is doubtful—although the language of § 79 of the act of 1874 may perhaps suggest that it may be done—whether they have any such authority. If they have not, any attempt by the board, after they have made the estimate, to set apart the sum so estimated as a separate fund would be null. But although the setting apart would be null, it would not invalidate their determination as to how much it is necessary to bring into the treasury for roads and bridges, nor invalidate the levy based on such determination.

The amount which the commissioners were, under § 79, ch. 1, of the act of 1874, authorized to have levied for all county expenses, other than for roads and bridges, and payment of the county debt, was $27,071.64. The amount which they estimated, represented by what is called the "general county fund" and the "county poor fund," was $24,000.00. The amount which could be appropriated during the year to roads was $4,700.00, instead of $8,000.00, as included in the commissioners' estimate and in the levy. There was estimated and inserted in the levy an excessive amount. On March 9, 1875, an act of the legislature was passed, (Sp. Laws 1875, ch. 164,) the first section of which reads as follows : " That the assessment of taxes heretofore made and provided for in the tax levy of said St. Louis county, for the year eighteen hundred and seventy-four, to defray the expense of establishment and construction of a road from the city of Duluth to the west line of the county of St. Louis, commonly called the Swan Lake road, be and the same is hereby legalized and made valid, and said sum so assessed as aforesaid shall be levied, collected, and become due and payable as other taxes for the year eighteen hundred and seventy-four."

There is no specific item in the record of the estimate of the board of commissioners to which this act can, *prima facie*, apply. On the trial below the county offered this act in evidence, and also to prove by parol that in the item for county road fund, $8,000.00, there was included $4,000.00 estimated by the board to provide for the payment of principal and interest of interest-bearing county orders, for defraying the expenses of establishing and the construction of the Swan Lake road. This was objected to on the ground that the evidence was immaterial and irrelevant, and that parol testimony could not be introduced to change or vary the records of the board, and that the record is conclusive against the county upon the question whether said sum of $4,000.00 was intended for said pur-

pose. The question on this objection is not whether the board could legally provide a fund for the Swan Lake road, but it is this : Does the act of 1875 refer to and legalize the item of $8,000.00 for county road fund, or the excess of such sum over what the board could, during the year, appropriate to roads ; and, for the purpose of ascertaining that, is it proper to prove by parol that in the $8,000.00 there was included an amount for the Swan Lake road?

We think it was, because it is not necessary that the record of the amount estimated for any general purpose should set out in detail every item making up the amount. For instance, the amount determined upon for general county fund is $18,000.00. It was not necessary—although, if practicable, it would have been proper—for the record to show that the amount was arrived at by estimating so much for the salary of each county officer, so much for fuel, lighting and rent of each office, so much for repairs, so much for court expenses, giving every item, however small, of such expenses, etc. Nor, in the estimate of how much may be needed during the year for roads, would it be necessary that the record of such estimate should show how much was estimated for each road, nor how much for opening, vacating, resurveying, or otherwise improving each road. And whenever it becomes necessary for a court to ascertain whether a particular item, not specified in the record, is included in a general item set down in the record, it must do so by receiving evidence of the fact other than that which the record furnishes. Such evidence does not impeach, vary, or change the record, but goes to prove a fact, consistent with the record, which the record need not and does not show. When it is proved that in the estimate of the board is included an amount for the Swan Lake road, the subject to which the first section of the act refers is ascertained, and the estimate of the board and the levy based on it are legalized.

The ruling of the court below on the item for county road

fund is reversed, and the court below will rehear the cases, as to that item, upon the principles herein laid down.

The facts as to the item of $12,000.00 for railroad bond interest are these : Prior to 1874 the county, under authority of an act of the legislature, issued to the Lake Superior & Mississippi Railroad Company its bonds to the amount of $150,000.00, bearing interest at the rate of seven per cent. per annum. Of these bonds $116,500.00 had been registered in the office of the state auditor, under the act of March 6, 1871, (Laws 1871, ch. 17,) and the state auditor had certified to the county auditor the amount required to pay the interest on the bonds registered for the current year, amounting to $8,155.00, and the point made is that the county commissioners had no authority to direct a levy on account of the interest on these railroad bonds for more than the $8,155.00, and that, the levy having been made for more than that sum, it is void, or void at least for the excess.

The authority to levy taxes to pay interest and principal of any county debt need not be given in the act authorizing the county to create it. Sections 76, 78, 79, ch. 1, Laws 1874, sufficiently authorize a tax to pay the interest and principal of all the county debt. Does the act of 1871 take away from the county commissioners the authority to direct a levy of taxes to pay the interest on bonds issued to railroad companies, unless the bonds have been registered and the amount required has been certified by the state auditor? It certainly does not unless the payment of such interest through the state officers was intended to be exclusive of the authority of the county officers to pay it; unless the provision for registering the bonds is compulsory upon the bondholders, and takes from them the right to demand their interest if they fail to register them; for, if they have the right to demand the interest upon bonds not registered, the state officers having no authority to pay it, the county officers must have such authority.

The language of the act is (§ 2): "All bonds heretofore

issued, and still unpaid, shall be registered by the holder thereof," and it exacts from the bondholders so registering a fee for each bond registered. Although the language is in form imperative, when we consider that construing it strictly would render the act of doubtful validity, we think it was not intended to require a registration of the bonds as a condition of the holder's right to demand the interest, but was intended only for the convenience of those bondholders who may choose to avail themselves of it, and, consequently, that it was not intended to take from the county commissioners the authority to provide for paying the interest on bonds not registered. The commissioners still provide for raising, by tax, the amount required to pay all the interest on the county debt, the county treasurer pays to the state treasurer the amount which has been certified by the state auditor to the county auditor, and the balance remains in the county treasury to pay the interest, according to the terms of the bonds or contracts under which the debts exist. The levy of the $12,000.00 for railroad bond interest was valid, and the court below will sustain the same.

In the tax upon the property involved in these cases there was included five mills on each dollar of valuation of the taxable property in the city of Duluth, which was levied by the common council of that city for a sinking fund. The creation of such a fund was provided for by an act of the legislature, passed March 8, 1873. Sp. Laws 1873, ch. 173. Section 2 of that act provides that " the mayor, city treasurer and comptroller of the city of Duluth are hereby created the board of commissioners of the sinking fund of the city of Duluth, *ex officio*, and it shall be the duty of the said commissioners to report to the common council of the said city, on or before the first day of February in each year, the amount of money necessary to be raised by taxation in that year to provide a proper sinking fund for the payment of the principal of all outstanding bonds of the said city on their maturity, and the common council of said

city shall thereupon cause such a tax to be levied upon the taxable property of said city, sufficient in amount to provide such sinking fund. The several amounts received for taxes, as hereinbefore provided, shall be paid into the treasury as provided by law, and shall be there held for the use of the sinking fund alone, as hereinafter provided." The board of commissioners of the sinking fund made no report to the common council. The levy by the council was made without it.

There is no authority for levying such a tax, except under this act. By it the board of commissioners alone are authorized to determine the amount necessary to be raised by taxation for the sinking fund. The common council has no such authority, nor any authority to levy a tax, until the amount should be determined by the board of commissioners. This tax was, therefore, void, and the ruling of the court below on the point is sustained.

The defendants claim that the taxes have been partially, unfairly, and unequally assessed, to their prejudice, and, to let in this defence, under Laws 1874, ch. 1, § 119, claim that the proceedings of the county board of equalization were irregular. This objection is based on the record of the proceedings of the board, the specific objections being that the record does not show that the members were sworn, and that, as appears from it, the board met on July 25, 1874, and on that day adjourned to the 3d day of August, and on the latter day completed the business before it.

This was the condition of the record as originally made; but more than a year after the board ceased to exist, and within four days prior to the trial, an attempt was made to alter the record by interlining a statement that each of the members took the oath. Who was guilty of thus illegally tampering with the record does not appear. After the final adjournment of the board no one could have authority to alter its record. But we are not satisfied that the record,

which is intended to set forth the proceedings of the board as a body, need show the qualifying of the individual members—acts which are prior and preliminary to the organization as a body.

The adjournment for ten days, till August 3, was irregular. The law provides (Laws 1874, ch. 1, § 69,) that "the county auditor and the county commissioners, or a majority of them, shall form a county board for the equalization of the assessment of real and personal property of their county. They shall meet on the fourth Monday in July, annually, at the office of the county auditor, and continue in session during that week, if necessary, for that purpose"—that is, for the purpose of equalization. This does not leave it discretionary with the board to meet on that day or to continue in session during the week. The necessity to sit during the entire week will be determined by whether they complete their business before the end of it. The interest of the public and protection to the tax payers require that the time during which the board shall sit shall be, as far as may be, fixed by law, and not left to the will of the board. It was the intention of the law that the board should meet on the day appointed, and continue in session on every business day during the entire week, if necessary, for that purpose, till the equalization is completed. The ruling of the court below, rejecting the evidence under this defence, is reversed, and it will rehear the cases upon this defence.

Section 2, ch. 5, of the act incorporating the city of Duluth (Sp. Laws 1870, p. 26,) provides "that the board of equalization for said county of St. Louis shall not have power nor authority to abate, alter, or amend the city assessment of real and personal property, as returned by the city assessor, * * * without first reporting the same for the action and approval of said common council, who may approve, disapprove, or modify the action of said board of equalization." The disapproval or modification, however, is to be made within twenty days after the report

is made to the council. No such report was made to the council, and the alterations made by the board of equalization as to assessments of the city of Duluth never took effect, and the court below will disallow any increase by the board of equalization upon the assessment of property in that city.

The issues upon which the decisions of the court below are herein held to have been erroneous will be retried on the principles herein stated. Its decision of the other issues is affirmed.