# WINONA AND ST. PETER LAND COMPANY *v.* MINNESOTA.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 31. Argued October 16, 1895. — Decided November 11, 1895.

The provisions in the statutes of Minnesota exempting from taxation the lands granted by the State to the Winona & St. Peter Railroad Company to aid in the construction of its railroad, until the land should be sold and conveyed by the company, ceased to be operative when the full equitable title was transferred by the company, and the railroad company could not, thereafter, by neglecting to convey the legal title, indefinitely postpone the exemption. *State* v. *Winona & St. Peter Railroad Co.*, 21 Minnesota, 472, followed.

Statutes exempting property from taxation are to be strictly construed.

Chapter 5 of the Laws of Minnesota of 1881, providing generally for the assessment and taxation of any real or personal property which had been omitted from the tax roll of any preceding year or years, does not, when applied to the land granted by that State to the Winona & St. Peter Railroad Company, deprive the owners of that land of their property without due process of law, in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States.

A legislature can provide for collecting back taxes on real property without making a like provision respecting back taxes on personal property.

ON March 3, 1857, Congress passed an act, 11 Stat. 195, c. 99, granting lands to the Territory, now State, of Minnesota, to aid in the building of railroads. On May 22, 1857, the

territorial legislature granted a portion of these lands, including those in controversy, to the Transit Railroad Company. Laws of Minnesota, 1857, special session, p. 17. The fourth section of this act provided that "the lands so granted shall be and are exempted from all taxation until the same shall have been sold and conveyed by said company." The Transit Company failed to comply with the conditions of this act, and, thereafter, by an act passed March 10, 1862, all its rights, benefits, property, and franchises, including the exemption of the lands from taxation, were transferred to the Winona and St. Peter Railroad Company. Laws of Minnesota, 1862, c. 19, p. 243. The latter company accepted the transfer and grant, and proceeded to build the railroad, and, as built, the lands were from time to time certified to the State, and by the State deeded to the company, some of the lands being thus conveyed in 1869 and others in 1870 and 1871.

On October 31, 1867, the railroad company entered into a contract with D. N. Barney and others. This contract recited the adjustment and settlement of an indebtedness of the company to Barney and his associates for money theretofore advanced, and provided for payment thereof in bonds and lands. No particular description was made in this contract of the lands to be thus conveyed, but only a general reference to the lands as those included in this congressional and state grant. The plaintiff in error, having succeeded to the rights of Barney and his associates, sought to obtain title to the lands, but the railroad company refused to convey, whereupon in 1879 suit was instituted, which terminated March 7, 1887, in a final decree of the Circuit Court of the United States directing a conveyance.

In 1881 (Laws 1881, c. 5, p. 24) the legislature of Minnesota passed an act providing generally for the assessment and taxation of any real or personal property which had been omitted from the tax roll of any preceding year or years. Under this statute, in 1886, the officers of Redwood County proceeded to assess and, tax these lands for the taxes of past years. In the proceedings thus instituted the plaintiff in error appeared, and defended on the ground that the lands were,

by virtue of the fourth section of the act of May 22, 1857, exempt from taxation until after the decree of March 7, 1887, and also on the further ground that the act of 1881 was unconstitutional in failing to provide proper notice to the owners of the property sought to be assessed and taxed. The proceedings terminated adversely to the plaintiff in error, and it immediately sought a review thereof in the Supreme Court of the State. That court directed judgment to be entered against the land for the taxes for the six years immediately preceding the assessment, holding that all claims for prior years were barred by the statute of limitations. *Redwood County* v. *Winona & St. Peter Land Co.*, 40 Minnesota, 512. To reverse this judgment plaintiff in error sued out this writ of error.

*Mr. James A. Tawney* for plaintiff in error.

*Mr. H. W. Childs,* Attorney General of the State of Minnesota, for defendant in error. *Mr. George B. Edgerton* was on his brief.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Two questions are presented: First, has the State of Minnesota, in disregard of section 10 of article 1 of the Constitution of the United States, passed any law impairing the obligation of contracts; and, second, were the tax proceedings in violation of that clause of the Fourteenth Amendment, which prohibits a State from depriving any person of property without due process of law?

With respect to the first question, it may be noticed that since the grant in 1862 to the Winona and St. Peter Railroad Company the legislature of the State has passed no statute in terms referring to the lands, or attempting to repudiate or break the contract of exemption. The act of 1881 is one making general provision for putting upon the tax roll all lands that have escaped taxation in prior years. Of the valid-

ity of a statute of that character — that is, one providing generally for subjecting to taxation lands that have improperly escaped taxation in prior years — there can be no serious doubt; so that the real contention is that the taxing officers applied this valid statute to lands which ought not to have been subjected to its operation by reason of a prior contract between the State and its grantee. Does this bring the case within the constitutional inhibition against a State's passing a law impairing the obligation of a contract? *Railroad Company* v. *Rock,* 4 Wall. 177; *St. Paul &c. Railway* v. *Todd County,* 142 U. S. 282; *Mobile & Ohio Railroad* v. *Tennessee,* 153 U. S. 486; *Central Land Company* v. *Laidley,* 159 U. S. 103.

Assuming, but not deciding, that this law of 1881, enacted subsequently to the contract created by the acts of 1857 and 1862, as practically applied by the officers of the State to the taxation of these lands, presents the question of a violation of the constitutional inhibition — and the contention of plaintiff in error is that it does, and that the question was distinctly presented to the state court and by it decided — we are of opinion that the judgment of that court was correct, and that it must be affirmed. The contract of exemption was by the terms of the act to continue until the lands were "sold and conveyed." Plaintiff in error insists that these words extend the exemption until the legal title is conveyed, which was not done until the decree of 1887. The state court held that the exemption was continued only until the full equitable title was transferred, and that the railroad company could not thereafter, by neglecting to convey the legal title, postpone indefinitely the exemption. This question was first presented to that court in *State* v. *Winona & St. Peter Railroad Co.,* 21 Minnesota, 472, and the decision in the present case was simply an affirmance of the prior ruling. See also *Brown County* v. *Land Company,* 38 Minnesota, 397; *Brown County* v. *Land Company,* 39 Minnesota, 380.

It is familiar law that statutes exempting property from taxation are to be strictly construed. *Bank* v. *Tennessee,* 104 U. S. 493; *Railroad Company* v. *Dennis,* 116 U. S. 665;

*Railroad Company* v. *Thomas,* 132 U. S. 174 ; *Schurz* v. *Cook,* 148 U. S. 397.

Section 4 of the act of 1857, after providing that the lands should be exempted from taxation until "sold and conveyed," added that, in consideration of the grant of land and other franchises, the railroad company should pay into the treasury of the Territory or State three per cent upon all the gross earnings, and that this three per cent, when paid, should be in lieu of all taxes whatever. Construing the entire section, the Supreme Court of the State held that the manifest object was to apply the full value of the land to the construction of the road ; that when that object was secured, the purpose of the exemption ceased ; that it could not have been the contemplation of the legislature to have created an exemption dependent wholly upon the will of the grantee and entirely irrespective of the complete accomplishment of the object for which the lands were granted ; that it was not to be expected that a sale could be made of the entire body of lands at once ; that sales would progress slowly and from time to time as purchasers could be found, and that it would obviously detract from the value of the grant if, while holding these lands only for purposes of sale, the company was compelled to pay taxes thereon, but that when the company had received full payment for the lands, its interest in the matter ceased, and the purpose of the grant was accomplished. It could not be supposed that the legislature purposed to bestow an exemption upon purchasers from the railroad company. The company, and not its grantees, was the intended beneficiary. The matter of exemption was between it and the State. It was to pay three per cent of its gross earnings, and this in lieu of all other taxes, including those upon these lands. No such equivalent was suggested as between the purchasers and the State. No contract of any kind was expressed as between them. Reference was made in the opinion to *Carroll* v. *Safford,* 3 How. 441, and *Witherspoon* v. *Duncan,* 4 Wall. 210, in which this court held, as to lands purchased from the United States, that after the full equitable title had passed and the government simply held the naked legal title as trustee for the purchaser, they became subject to state taxation.

We concur in these views. A permanent exemption of land from taxation, or an exemption dependent upon the will of an individual, is something not to be adjudged unless the language creating such exemption clearly compels such construction; and when a statute creates an exemption with the evident design of aiding in accomplishing a particular result, the exemption should be expected to cease when that result has been accomplished, and the statute should be read in the light of such expectation. While it may be that the word " conveyed " generally implies the passing of the legal title, it is not inaptly or incorrectly used to describe a transfer of title, legal or equitable, and whether it is used with a narrow and technical meaning, or in a broad and general sense, is to be determined by the context, and the circumstances under which the entire instrument or document, in which it is found, was framed. " There can be no doubt whatever of the general proposition that, in the interpretation of any particular clause of a contract, the court is not only at liberty, but is required, to examine the entire contract, and may also consider the relations of the parties, their connection with the subject-matter of the contract, and the circumstances under which it was signed." *Chicago, Rock Island &c Railway* v. *Denver & Rio Grande Railroad,* 143 U. S. 596, 609. Read in the light of these rules of construction the words "sold and conveyed," as found in the exempting section, are satisfied when the railroad company has received full payment for the lands, and executed an instrument by which all its equitable and substantial interest in them is transferred. It has then not contracted to sell, but has sold ; it has not contracted to convey, but has conveyed. It has parted with all its interest, and is thereafter only a barren trustee of a naked legal title held for the benefit of the true owner.

It is now earnestly contended by plaintiff in error that the Barney contract did not operate to transfer the full equitable title. Two propositions are relied upon : First, it is said that the contract contained dependent covenants, and that the covenant to convey the lands depended upon the performance of certain conditions by the contractors; and, second,

that the lands were not particularly described. With reference to these contentions, it may be remarked that the only part of the record in the case of *Barney and others* v. *The Railroad Company*, which is before us, is the decree which recites no performance of conditions precedent, but simply adjudges a conveyance. Can we assume, therefore, that it was based upon the performance by the plaintiff of conditions precedent? Must it not rather be held that it adjudicated rights created solely by the original contract and enforced a conveyance stipulated in it? Turning to the contract itself, we find that it recites the advancement of large sums of money by Barney and associates theretofore made for the construction and equipment of 105 miles of railroad, a liquidation of the indebtedness thereby created, and part payment thereof, and then contains an agreement to issue certain bonds in further part payment, and for the residue of the said indebtedness promises to convey all the granted lands earned by the construction of the 105 miles of railroad. It is also true that there is no description of the lands by sections, towns, and ranges, and that the contract stipulates that the conveyance shall be when the railroad company shall obtain the title; but the description by reference to the acts of Congress and the territorial and state legislatures is sufficient, and the right to a conveyance is established by the contract, and is given as final payment of an indebtedness already existing. Subsequent to these stipulations there is a further promise that the contractors will fully pay and discharge certain floating debts of the company, amounting to the sum of $49,000, which is undoubtedly part of the consideration on the part of the contractors. But such promise seems to stand as an independent covenant, and it would be doing violence to the language to hold that performance of this promise was a condition precedent to the right to receive payment in bonds and lands. Not only that, the contractors in terms agreed to "receive and accept the property and things hereinbefore agreed to be transferred to them in full payment, satisfaction, and discharge of all indebtedness" of the railroad company to them. It is also true that the contract contemplated the possibility of an extension of the road,

and that such extension, if made by Barney and his associates, was to be paid for by an additional issue of bonds and the conveyance of the lands within the limits of the grant to be earned by such further construction. But there is nothing in the record to show that such construction was in fact undertaken by Barney and his associates, or that any of these lands passed by virtue thereof.

But a conclusive answer to the contention is this: The proceedings in the District Court were commenced to enforce the payment of taxes delinquent and unpaid on the first Monday of January, 1888, and the final decision of the Supreme Court limited the right to recover such delinquent taxes to the period of six years prior thereto. The decree in the Circuit Court of the United States was entered on March 7, 1887. The findings of fact show that the suit in which this decree was entered was commenced in 1879. The decree relates back to the time of the commencement of the suit, and adjudicates the rights of the parties as of that date. It was, therefore, an adjudication that in 1879 Barney and his associates held the full equitable title to these lands ; but the lands were held subject to no taxes prior to those of 1880. It is, therefore, unnecessary to enter into any elaborate discussion of the terms and stipulations of the contract, or to seek to determine what are or are not dependent covenants. It is enough to rest upon the fact that by conclusive decree of a competent court it is established that the full equitable title had passed to the plaintiff in error prior to the time at which the lands were adjudged taxable. The case, therefore, in this direction is narrowed to the single question, as to the scope and meaning of the exempting statute of May 22, 1857; and for the reasons stated, we agree with the Supreme Court of the State in its construction thereof.

The other contention of plaintiff in error is that in these tax proceedings there was a lack of due process of law. That they were in substantial conformity with the provisions of the Minnesota statutes, and that there is nothing in those statutes in conflict with the state constitution, is settled for this court adversely to the plaintiff in error by the decision of the

Supreme Court of the State. *State Railroad Tax Cases*, 92 U. S. 575–618; *Palmer* v. *McMahon*, 133 U. S. 660; *Pittsburg, Cincinnati &c. Railway* v. *Backus*, 154 U. S. 421.

We pass, therefore, to consider the claim that the Minnesota statutes, so far as they attempt to provide for the subjection of property which has escaped taxation in prior years, to the taxes of those years violate that clause of the Fourteenth Amendment to the United States Constitution which forbids a State to deprive one of property without due process of law. What are the provisions of those statutes? The general tax law of the State is found in the statutes of 1878, commencing at page 2. Section 113 contemplated the collection of unpaid back taxes. This section was amended in 1881, (Laws of 1881, page 24,) so as to read as follows :

"If any real or personal property shall be omitted in the assessment of any year or years and the property shall thereby escape taxation, when such omission shall be discovered, the county auditor shall enter such property on the assessment and tax books for the year or years omitted, and he shall assess the same and extend all arrearage of taxes properly accruing against such property with seven (7) per cent interest thereon, from the time said taxes would have become delinquent, and the same shall be extended against such property on the tax list for the current year."

This being an amendatory statute places the amended section as part of the general tax law, and it is to be construed accordingly. The section provides that if any property shall have been omitted from the assessment of any year it shall, upon discovery of that fact, be entered upon the assessment and tax books for that year, that all taxes for that year be charged thereon against it, with interest, and then extended against it on the tax list for the current year. In other words, for the purposes of collection, it stands on the tax list for the current year the same as any other property, and all taxes thereon are to be collected in the same manner. The amount of the tax for the omitted year is the same as that which was enforced against all other properties for that year, so that the only difference is in the mode of assessment and the charge of interest.

We must, therefore, inquire, in the first place, whether under the general tax law there is sufficient provision for notice to the owner of property before it is subjected to sale for non-payment of taxes; in the second place, whether the difference in the mode of assessment deprives the property owner of any constitutional right; and, in the third place, whether there is in section 113 any other matter which vitiates it.

With reference to the collection of taxes it may be remarked generally that the Minnesota statute authorizes such collection by suit in court. By section 70 the county auditor is required, between June 1 and 15, to file in the office of the clerk of the district court of the county a list of the delinquent taxes upon real estate, which shall contain a description of the land, the name of the owner if known, and if unknown so stated, and the amount of the delinquent tax for each year, which list shall be verified by his affidavit; and the filing of this list is to be considered as the filing of a complaint by the county against each piece or parcel of land therein described to enforce payment of the taxes and penalties appearing against it. Publication is then to be made of this list, together with a notice in the form prescribed by statute, for at least two weeks in some newspaper of general circulation in the county. (Secs. 71 and 72.) Upon the final publication of this notice the jurisdiction of the court over the property attaches. (Sec. 73.) Within twenty days after the last publication any person having an estate, right, title, or interest in or lien upon any parcel of land described in such list may file in the office of the clerk of the court an answer setting forth his defence or objection to the tax or penalty, which shall describe the piece or parcel of land and state the facts constituting his defence or objection to such tax or penalty, and thereupon the court is to hear and determine the questions raised by this complaint and answer, as it hears and determines any other action. (Sec. 75.) It is a full defence that the taxes have been paid or that the property is not subject to taxation. (Sec. 79.) The list is *prima facie* evidence of compliance with all provisions of law in relation to the assessment and levy of taxes. No omission of any of the things required

by law in relation to such assessment and levy "shall be a defence or objection to the taxes appearing upon any piece or parcel of land, unless it be also made to appear to the court that such omission has resulted to the prejudice of the party objecting, and that the taxes against such piece or parcel of land have been partially, unfairly, or unequally assessed; and in such case, but no other, the court may reduce the amount of taxes upon such piece or parcel, and give judgment accordingly." (Sec. 79.)

We think this opens to the property owner full opportunity for defence, and that he can raise every objection to which in law he is entitled. If he has paid his taxes, or if the land is not subject to taxation, the property is wholly discharged. If there has been any irregularity in the proceedings which worked to his predjudice he can show such irregularity, and, so far as it has injured him, secure a reduction in the amount. In reference to this matter we quote from the opinion of the Supreme Court of the State in this case, which shows fully the extent to which a party can, under the statutes of the State of Minnesota, make defences to these tax proceedings:

"Within twenty days after the last publication of the delinquent list any person may, by answer, interpose any defence or objection he may have to the tax. He may set up as a defence that the tax is void for want of authority to levy it, or that it was partially, unfairly, or unequally assessed. *Com'rs of St. Louis Co.* v. *Nettleton*, 22 Minn. 356. He may set up as a defence *pro tanto* that a part of a tax has not been remitted, as required by some statutes. *Com'rs of Houston Co.* v. *Jessup*, 22 Minn. 552. That the land is exempt, or that the tax has been paid. *County of Chisago* v. *St. Paul & Duluth Railroad*, 27 Minn. 109. That there was no authority to levy the tax, or that the special facts authorizing the insertion of taxes for past years in the list did not exist, or any omissions in the proceedings prior to filing the list, resulting to his prejudice. *County of Olmsted* v. *Barber*, 31 Minn. 256. The filing of the list is the institution of an action against each tract of land described in it, for the recovery of the taxes appearing in the list against such tract, and tenders

an issue on every fact necessary to the validity of such taxes. *Chauncey* v. *Wass*, 35 Minn. 1. The only limitation or restriction upon the defences or objections which may be interposed is that contained in section 79, to the effect that, if a party interposes as a defence an omission of any of the things provided by law in relation to the assessment or levy of a tax, or of anything required by any officer to be done prior to filing the list with the clerk, the burden is on him to show that such omission has resulted in prejudice to him, and that the taxes have been partially, unfairly, or unequally assessed. This relates not to want of authority to levy the tax, but to some omission to do or irregularity in doing the things required to be done in assessing or levying a tax otherwise valid. *Com'rs of St. Louis Co.* v. *Nettleton, supra.* And certainly, in justice or reason, a party cannot complain that, when he objects to a tax on the ground of some omission or irregularity in matters of form, he is required to show that he was prejudiced."

All the privileges which are secured to the property owner in respect to the taxes of the current year are also secured to him in reference to those imposed under amended section 113. He is, therefore, notified and given an opportunity to be heard before his property is taken from him. Questions of this kind have been repeatedly before this court, and the rule in respect thereto often declared. That rule is that a law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the Fourteenth Amendment to the Constitution, which declares that no State shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it either before that amount is determined or in subsequent proceedings for its collection. *McMillen* v. *Anderson*, 95 U. S. 37 ; *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation District*, 111 U. S. 701; *Spencer* v. *Merchant*, 125 U. S. 345; *Palmer* v. *McMahon*, 133 U. S. 660; *Lent* v. *Tillson*, 140 U. S. 316; *Pittsburg, Cincinnati &c. Railway* v. *Backus*, 154 U. S. 421. That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribes the

court in which and the time at which the various steps in the
collection proceedings shall be taken a notice by publication
to all parties interested to appear and defend is suitable and
one that sufficiently answers the demand of due process of
law.  *State Railroad Tax Cases*, 92 U. S. 575, 609; *Hagar* v.
*Reclamation District*, 111 U. S. 701, 710; *Kentucky Railroad
Tax Cases*, 115 U. S. 321; *Lent* v. *Tillson*, 140 U. S. 316, 328;
*Pittsburg, Cincinnati &c. Railway* v. *Backus*, 154 U. S. 421.
It cannot be doubted under these various authorities that in
respect to the collection of these taxes ample provision is made
for notice, and, therefore, that it cannot be adjudged that the
owner is for want thereof deprived of his property without
due process of law.

With respect to the next inquiry, it is true there is a differ-
ence in the mode of assessment.  Section 113 authorizes the
county auditor to make the assessment, while as to property
generally the assessment is made by the county assessor.
The latter also acts upon actual view, (sec. 33,) while there is
in section 113 no such direction to the county auditor.  The
assessment made by the assessor comes before a town board
of review, (sec. 39,) and subsequently before a county board of
equalization.  (Sec. 44.)  Neither of these provisions is found
in section 113.  So that the difference between the two modes
of assessment may be stated thus : in the one case there is an
assessment by one officer, with a right to review his action; in
the other, there is an assessment by a different officer, and no
provision for a review except as the matter comes before the
court in the proceedings for the collection of taxes.  But there
is nothing in this difference to affect the constitutional rights
of a party.  The legislature may authorize different modes of
assessment for different properties, providing the rule of assess-
ment is the same.  *Kentucky Railroad Cases*, 115 U. S. 321,
337; *Pittsburg, Cincinnati &c. Railway* v. *Backus*, 154 U. S. 421.

. One other suggestion is made by counsel for plaintiff in
error.  Section 113 contemplates the assessment and taxation
of both real and personal property.  It is claimed that the
taxation of personal property is manifestly void because, even
under the general tax law, there is no provision for notice to

the owner of the property before the charge is fixed upon him, and that it cannot be assumed that the legislature would attempt to provide for the taxing of real property which had escaped taxation in prior years without also providing for a like taxation of personal property, and hence that the whole section must fail. The Supreme Court of the State was of opinion that even if the tax on personal property was not collectible under the general provisions of the tax law for the reason claimed, yet there was at least a valid tax which, in the absence of any law providing another method, might be enforced by an ordinary personal action. It seems to us, also, that the assumption that it cannot be believed that the legislature would never seek to provide for the collection of back taxes on real property without at the same time including therein a like provision for collecting back taxes on personal property, cannot be sustained. The case is different from that of an ordinary tax law in which there may be some foundation for the claim that the legislature is expected to make no discrimination, and would not attempt to provide for the collection of taxes on one kind of property without also making provision for collection of taxes on all other property equally subject to taxation. For this statute rests on the assumption that, generally speaking, all property subject to taxation has been reached and aims only to provide for those accidents which may happen under any system of taxation, in consequence of which here and there some item of property has escaped its proper burden; and it may well be that the legislature in view of the probabilities of changes in the title or situs of personal property might deem it unwise to attempt to charge it with back taxes, while at the same time, by reason of the stationary character of real estate, it might elect to proceed against that. At any rate, if it did so it would violate no provision of the Federal Constitution, and whether it did so or not was a matter to be determined finally by the Supreme Court of the State.

These being the only matters presented, and in them appearing no error, the judgment of the Supreme Court of the State will be

*Affirmed.*