## CLARKE v. EUREKA COUNTY BANK.

(Circuit Court, D. Nevada. July 6, 1903.)

### No. 728.

1. ESCROW—CONSTRUCTION OF AGREEMENT—CONDITIONS PRECEDENT.

   A provision of an escrow agreement that shares of stock shall be delivered by the custodian to one of the parties when a certain fact shall have been finally determined creates a condition precedent, which must be shown to have been fulfilled before delivery of the stock can be legally demanded.

2. SAME—AMBIGUITY OF WRITING—RULES OF CONSTRUCTION.

   Where the language of a written escrow agreement is uncertain and ambiguous, it is the duty of the court, in construing it, to take into consideration the circumstances and conditions existing when it was made, in order to ascertain the intention of the parties.

¶ 1. See Escrows, vol. 19, Cent. Dig. § 11.

**3. SAME—AGREEMENT CONSTRUED.**

Plaintiff's assignor, who held a deed to an undivided interest in a mining property, sold and conveyed the same to a corporation in consideration of a certain number of shares of its stock. At that time a suit which had been brought by his grantor to set aside a trust deed covering the property was pending on appeal in the Supreme Court. The shares of stock were deposited in escrow with defendant under an agreement that they should be delivered to the vendor "when it is finally determined" that he owned the interest in the property on the date when he conveyed the same, and that, in case it should be determined that he was not the owner of such interest, the stock should be redelivered to the company. *Held*, it appearing that there was no other question as to validity of the vendor's title, that the condition of the escrow agreement on which the stock was to be delivered had reference to the suit to cancel the trust deed, and that on the entry of a final decree canceling such deed the condition was fulfilled, and the delivery of the stock was legally demandable.

**4. SAME—CONVERSION BY CUSTODIAN—MEASURE OF DAMAGES.**

Where a custodian holding shares of stock in escrow refused to deliver them to the party entitled thereto when legally demanded, on fulfillment of the conditions of the escrow agreement, and, in an action brought against it for their conversion, instead of depositing them in court, set up a defense in behalf of the other party to the agreement which was wholly without merit, the plaintiff is entitled to recover as damages, in addition to the value of the stock, a sum equal to legal interest thereon from the time of conversion.

## Action for Conversion, Tried to the Court without a Jury.

The correspondence between the respective parties concerning the demand made by plaintiff for the delivery of the shares of stock, referred to in the opinion of the court, is here set forth:

On March 12, 1902, counsel for plaintiff addressed a letter to the defendant which reads as follows:

"On the 25th day of January, 1902, a judgment and decree was rendered and entered by the * * * district court of * * * Ormsby county, in the case of Irene M. Robinson v. Henry Kind and Eugene Howell, fully adjusting all equities between the parties, and providing for a disposition of the property involved, and especially adjudging that the interest in the mining ground of the Rocco-Homestake Mining Company, conveyed by Mrs. Robinson to the late R. M. Clarke is vested in him and his successors, so that neither Mrs. Robinson nor Messrs. Kind and Howell, or either, have any interest therein, or the stock issued thereon, which you hold in escrow. The defendants have waived application for new trial and appeal in the above cause, and the judgment therein has become final, thus ending the litigation between the parties. General Clarke's right to the stock in question and the dividends accrued thereon had in fact become final before his death, February 11, 1901, by a decree theretofore rendered by the United States Circuit Court for the District of Nevada, quieting the title to the mining ground in question. Before his death he assigned and transferred the stock and dividends in question to Ida K. Clarke, his then wife, now, widow, for valuable consideration, and she is now the owner of the mining stock and dividends above mentioned. We are her attorneys, and agents, with authority to receive and collect in her name the stock and dividends in question, and as such we hereby demand that you deliver the same to us, or either of us, and we hereby designate Wells, Fargo & Co. Express Company, at Eureka, Nevada, to receive the stock and money in question, and receipt for the same in our names, as well as for Mrs. Clarke. We will thank you to render us a full statement of the dividends and interest thereon, if any, which have accrued on said stock. We will thank you also to furnish us at our expense an exact copy of the escrow agreement under which you accepted the trust, together with any other information, if you have any, in your possession, bearing upon the right of Mrs. Clarke to the stock and dividends. It is our

understanding that she is entitled to the stock and dividends now in your possession above referred to, and that no adverse claim exists thereto, or can exist. Awaiting your reply by return mail we are,

"Very respectfully yours,                             N. Soderberg,
                                                      "Alfred Chartz,
                        "Attorneys and Agents for Mrs. Ida K. Clarke.
"I hereby ratify the foregoing demand.                Mrs. Ida K. Clarke."

To this letter the defendant on March 15, 1902, replied as follows:

"Dear Sirs: As per your request in your favor of the 12th inst., as a matter of courtesy, we herewith hand you copy of the paper you refer to as the 'escrow agreement under which we accepted the trust.' You state that certain things have happened, but you send us no evidence whatever thereof. If you have any record evidence showing that 'it is finally determined that said Robert M. Clarke owned the undivided one-twelfth of the Homestake Mine, etc.,' please send us the same; * * * in the event that you can show that 'it is finally determined' that Genl. Clarke owned the $1/12$ interest in the said mine.

"Yours truly,                             The Eureka County Bank,
                                          "By Oscar J. Smith, President."

On April 11, 1902, counsel for plaintiff addressed the following letter to the defendant:

"Referring to our previous correspondence in reference to the matter of the escrow of R. M. Clarke's mining stock in Rocco-Homestake Company now and for some time past the property of Ida K. Clarke, we hereby inclose copies of the following papers: 1st. Decree of U. S. Circuit Court, District of Nevada, in the case of the Rocco-Homestake Mining Company, a corporation, complainant, v. Henry Kind and Eugene Howell, defendants. 2nd. Final judgment and decree in Robinson v. Kind et al. rendered by the district court of * * * Ormsby county, Nevada, on the 25th day of January, 1902. 3rd. Assignment from R. M. Clarke to Ida K. Clarke. 4th. Ratification in writing by Ida K. Clarke of our demand upon you for the mining stock in question, dated March 12, 1902. * * * Upon these documents we renew our demand that you deliver the stock and dividends thereunto belonging to Wells, Fargo & Co. at Eureka, Nevada. * * * In conclusion we will say that if you intend in good faith to deliver and pay over the stock and dividends in question according to the terms of the escrow, you should do so promptly upon the showing now made. It is self-evident that the judgment and decree of the Circuit Court of the United States inclosed herewith is decisive of the question. From the time of its rendition there could have been no valid reason for your withholding the stock and dividends accrued, unless it be that no formal notice had been given you of the rendition of such judgment and decree. Your president, Oscar J. Smith, was present at its rendition, and familiar with the circumstances under which it was given. He also has been cognizant for several weeks past of the judgment by the * * * district court, Ormsby county, Nevada, in Robinson v. Kind et al. It is also a matter of fact that the assignment to Mrs. Clarke was made upon his suggestion given in writing. We have instructions from our client to enforce this demand by legal proceedings if necessary, but trust we will not be required to resort to same.

"Yours very respectfully,             N. Soderberg and Alf Chartz,
                                      "Agents and Attorneys of Ida K. Clarke."

To this letter the defendant on April 16, 1902, replied as follows:

"Dear Sirs: Your valued favor of the 11th inst., with stated enclosures, is at hand and noted. The duty of this bank, as trustee, is to hold the property covered by the trust until 'it is finally determined that said Robert M. Clarke owned the undivided one-twelfth of the Homestake Mine * * * conveyed by the said Robert M. Clarke to the said Rocco-Homestake Mining Company, on the second day of May, A. D. 1899'; or, until the opposite is determined. This bank insists upon a literal compliance with the terms of the trust.

"Yours very respectfully,             The Eureka County Bank,
                                      "By Oscar J. Smith, President."

Alfred Chartz and N. Soderberg, for plaintiff.
Cheney, Massey & Smith, for defendant.

HAWLEY, District Judge. This is an action to recover the sum of $15,000 damages for the alleged wrongful conversion of 1,000 shares of the Rocco-Homestake Mining Company, with dividends and accumulations. The case was tried before the court, a jury having been waived by stipulation of the parties. It is admitted that the value of the shares of stock at the time of the alleged conversion thereof was $6,000, as alleged in the complaint, and that the dividends thereon amounted to $4,300, as stated in the answer.

It appears from the testimony that in 1899 Robert M. Clarke, an attorney at law, since deceased, claimed an undivided interest in the Homestake mine, situate in White Pine county, Nev. That the claim of Clarke had its origin in a deed from Mrs. Irene M. Robinson, conveying to him this interest in the Homestake mine in consideration of his legal services rendered her in the suit of Robinson v. Kind, 23 Nev. 330, 47 Pac. 1, 977; Id., 25 Nev. 261, 59 Pac. 863, 62 Pac. 705. That during the year 1899 negotiations were carried on by the Rocco-Homestake Mining Company for the purchase of the interest claimed by Clarke, which resulted in an agreement that Clarke would convey his interest in the property to the corporation for 1,000 shares of the capital stock of the company, said stock to be placed in escrow until it was determined that he owned the interest claimed in the property. That on May 2, 1899, in pursuance of this agreement, Clarke made a conveyance to the company of his interest in the mine, and three days thereafter the instrument designated as the "escrow agreement" or "receipt" was signed and executed. It reads as follows:

"Received of Robert M. Clarke, one thousand shares of the capital stock of the Rocco-Homestake Mining Company, of San Francisco, California, to be delivered to the order of the said Robert M. Clarke, together with the profits or dividends accrued and accruing thereon, when it is finally determined that said Robert M. Clarke owned the undivided one-twelfth of the Homestake mine, situate in Swansea Cañon, White Pine county, Nevada, conveyed by the said Robert M. Clarke to the said Rocco-Homestake Mining Company, on the 2nd day of May, A. D. 1899. Should it be determined that the said Robert M. Clarke was not the owner of the said one-twelfth interest in the said Homestake mine, then and in that case, the said Robert M. Clarke releases and relinquishes any and all claims to the said 1,000 shares of stock and authorizes the delivery of the same to the order of the Rocco-Homestake Mining Company of San Francisco, California.

"The Eureka County Bank,
"By Oscar J. Smith, President.
"Eureka, Nevada, May 5, 1899.

"For and in consideration of the sum of one dollar, to me in hand paid, the receipt whereof I do hereby acknowledge, and for other valuable considerations, I hereby agree and consent to all the terms of the above and foregoing.                    Robt. M. Clarke."

That after the execution of this instrument the one thousand shares of stock in controversy in this action were delivered into the possession of the defendant, and have ever since remained in its possession, together with the accumulated dividends on said shares.

In regard to the execution of this instrument, there is some controversy as to whether or not Clarke was competent to execute the paper,

and as to where it was executed.   Mr. Oscar J. Smith, who was at the time of the execution of the receipt the president of the defendant, and also president of the Rocco-Homestake Mining Company, and is one of the attorneys for the defendant in this action, was called as a witness on behalf of plaintiff, and testified as follows:

"The receipt was written out at my office at Reno, or General Clarke's office and my own—he had his office with me at Reno at that time—by General Clarke and myself.   I did the typewriting, and the receipt was made out by the two of us; I representing the bank and the mining company, and he representing himself.   It was made and signed by myself for the bank, and General Clarke for himself, there in that office.   * * *   General Clarke dictated part of it, and I wrote part of it.   I did the typewriting.   * * * I think he went back the next day, but as to that I would not be sure, and furthermore I think it was the last time he was ever there to attend to any business."

On July 4, 1899, Mr. Smith called at the family residence in Carson, Nev., and conversed with Mrs. Clarke as to the chances of Mr. Clarke recovering from his illness.   Both were of opinion that his condition was very critical, and that the probabilities were that he would pass away within a very few days.   Mr. Smith then suggested the propriety of having the stock in question conveyed to her for her protection, and stated that, anticipating the conditions they had discussed, he had prepared a bill of sale conveying Mr. Clarke's interest in the shares of stock to her.   There is some controversy as to who prepared the bill of sale which Mr. Clarke signed, but, inasmuch as Mrs. Clarke's interest is admitted, it is wholly immaterial who prepared the document.   A copy of this bill of sale was introduced by plaintiff.   It conveys to Mrs. Clarke all his "right, title and interest in and to one thousand shares of the capital stock of the Rocco-Homestake Mining Company, a corporation, now held in escrow under certain conditions by the Eureka County Bank, Eureka, Nevada."   Clarke died February 11, 1901.   On March 12, 1902, counsel for plaintiff made a demand upon the defendant for the delivery of this stock and the accumulated dividends.

Among other things, it is claimed by the defendant "that no demand has ever been made, as disclosed by the evidence, that would entitle this plaintiff to sue for damages for conversion."   The correspondence between the parties to this suit with reference to the demand is set out at length in the statement of facts, reference thereto being here made.   The contention of counsel depends entirely upon the question whether or not the conditions in the escrow agreement had been complied with at the time of the demand for the shares of stock.   Has the condition of the escrow agreement that the stock is to be delivered "when it is finally determined that said Robert M. Clarke owned the undivided one-twelfth of the Homestake Mine" been complied with?   This condition is in the nature of a condition precedent, and, if the case rests upon the escrow agreement, it must be shown that it has been determined that Clarke owned the interest in the mine which he conveyed to the Rocco-Homestake Mining Company.   Soderberg v. Crockett, 17 Nev. 409, 415, 30 Pac. 826; Inda v. McInnis, 25 Nev. 235, 240, 59 Pac. 3.   The condition in the escrow agreement is vague, uncertain, and indefinite.   How was it to be "finally determined" that

Clarke owned this interest? The manner in which it was to be determined is not stated. Whether an independent suit was to be brought to determine the question, or whether it was to be determined by arbitration, or by the courts, or by agreement of the parties, or in any other manner, is left upon conjecture merely. The reading of the escrow agreement does not, of itself, throw any light on this subject. This being true, it becomes the duty of the court to inquire into the circumstances and conditions which existed at the time of the negotiations between Gen. Clarke and the Rocco-Homestake Mining Company for the purchase of his interest in the Homestake mine, which resulted in depositing the shares of stock in question with the defendant, subject to the conditions named. This is necessary in order to bring the language in the "escrow agreement" as near to the intention and actual meaning of the parties at the time of its execution as the words which they saw fit to employ and rules of law will permit. The rule is universal that it is the duty of the court, where the language used is not clear, positive, and certain, to consult the conditions, situation, and motives of the respective parties for the purpose of ascertaining their intention. Leete v. Pacific Mill & Mg. Co. (C. C.) 88 Fed. 957, 967; Wolff v. Wells, Fargo & Co., 115 Fed. 32, 35, 52 C. C. A. 626; Accumulator Co. v. Dubuque St. Ry. Co., 64 Fed. 70, 74, 12 C. C. A. 37; Salt Lake City v. Smith, 104 Fed. 457, 463, 43 C. C. A. 637. This rule has been applied in a great variety of cases. In Kauffman v. Raeder, 108 Fed. 171, 175, 47 C. C. A. 278, 54 L. R. A. 247, where, in order to decide the contention there raised as to the right of a party who had accepted and retained the benefits of an agreement substantially performed by the other party, to enjoy those benefits, and still rescind the agreement which he had stipulated he would perform, the court deemed it necessary, before deciding the question, to obtain a clear idea of the relations of the parties to the agreement, and the moving considerations which induced the parties to sign it, and said:

"This conception must be secured by the light of the fundamental rule that the situation of the parties when the contract was made, its subject-matter, and the purpose of its execution are material to determine the intention of the parties and the meaning of the terms they used, and that when these are ascertained they must prevail over the dry words of the stipulation."

See, also, Fox v. Tyler, 109 Fed. 258, 260, 48 C. C. A. 356; Rock Island Ry. Co. v. Rio Grande Railroad, 143 U. S. 596, 609, 12 Sup. Ct. 479, 36 L. Ed. 277; Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 531, 16 Sup. Ct. 83, 40 L. Ed. 247; Mayer v. Goldberg (Wis.) 92 N. W. 556, 558.

What were the conditions which created the adverse interest or cloud upon the interest claimed by Clarke? Was there any adverse interest held by any other person? If so, by whom? Is it possible from the evidence in this case to determine what the parties meant when they said that the stock was not to be delivered until Clarke's claim was finally determined? What were the existing facts in regard to this title?

We glean from the voluminous documents in evidence in this case that in 1892 Mrs. Irene M. Robinson, who was the heir at law of her

deceased husband, Eugene N. Robinson, claimed to own an interest in the Homestake mine; that she conveyed one-twelfth thereof to R. M. Clarke, as hereinbefore stated, and the balance of her interest to the Rocco-Homestake Mining Company. It must have been with reference to the title or claim thus acquired that the negotiations were had between the corporation and Clarke for the purchase of his interest. It appears that, previous to the execution of the deeds last referred to, Mrs. Robinson had instituted a suit in the state district court of Eureka county against Henry Kind and Eugene Howell to set aside a trust deed made by her to Kind, as trustee—to secure the payment of certain sums due Howell, etc.—of the Homestake mine, on the ground that Mrs. Robinson was not of sound mind and memory when the trust deed was executed. The trial of this suit resulted in a judgment in her favor. Kind and Howell appealed to the Supreme Court, and this appeal was pending in that court at the time of the execution of the escrow agreement. Do not these undisputed facts clearly show, beyond question, that it was with reference to this litigation that the escrow agreement was executed, and that the words we have so frequently quoted had reference thereto? If Mrs. Robinson won the suit, the result would be that Clarke's title was determined thereby. There is no pretense that there was any adverse interest to Clarke's claim, except that raised in the suit of Robinson v. Kind. When that case was decided upon appeal in the Supreme Court, the judgment of the lower court was reversed, and a petition for rehearing was denied. Robinson v. Kind, 25 Nev. 269, 291, 59 Pac. 863, 62 Pac. 705. Thereafter the venue of said suit was transferred, by an order of the district court of Eureka county, to the district court of Ormsby county, Nev., in pursuance of a stipulation of the parties, which provided, among other things, that the cause might be heard and determined by the district court in Ormsby county "upon this stipulation and agreement, and upon the evidence, oral and documentary," taken and admitted at the trial of the cause in Eureka county, and "contained in the defendants' statement on motion for new trial." The case was regularly placed on the docket and calendar of the district court of Ormsby county, and set for hearing on July 27, 1901, and the hearing thereof was continued from time to time, and on December 20, 1901, the following minute entry was made in said court:

"The trial of the above-entitled action came on to be heard at this time, Alfred Chartz, Esq., appearing on part of plaintiff; and, after reading pleadings and stipulation in said action, all of the papers, testimony, and evidence of the two preceding trials of this action were submitted to the court for his consideration, and asked that the court render his decision thereon. Court thereafter took matter under advisement, and all of said papers for reading."

On January 6, 1902, the court convened and made the following order:

"In the above-entitled action, court ordered that judgment be entered in favor of plaintiff in accordance with the stipulation on file herein; that she was non compos mentis at the time of execution of deeds."

No appeal has been taken from said judgment.

The judgment in that suit, in its legal effect, determined that Clarke was the owner of the interest in the Homestake mine which he con-

veyed to the corporation, and in consideration of said deed the corporation issued to him the 1,000 shares of stock, which was deposited with the defendant. The condition in the escrow agreement having been determined, the demand made by plaintiff for the stock was a legal demand, and the refusal of defendant to deliver the stock was an unlawful conversion thereof, and entitled plaintiff to maintain this action for damages.

But in addition to the proceedings had in the state court, it appears that in May, 1899, the Rocco-Homestake Mining Company, by Robert M. Clarke and Oscar J. Smith, its attorneys, brought suit in this court against Henry Kind and Eugene Howell to quiet its title to the Homestake mine. The defendants answered separately. Kind set up his title under the trust deed, hereinbefore mentioned, from Mrs. Robinson, and Howell alleged that he was "the owner of said two-thirds interest in said mining claim." The cause came up regularly for trial January 10, 1900, at which time the respective parties to the suit stipulated that, for a valuable consideration received by the defendants, all the differences existing between the parties had been compromised, settled, and adjusted, and, as a part of said compromise and settlement, "it is by said defendants, Henry Kind and Eugene Howell, stipulated and agreed that the said complainant have a decree herein quieting its title to the premises mentioned in the bill of complaint and hereinafter described, viz., that certain mine, mining claim, and mining location located by Rocco Kranaze, E. N. Robinson, and Frank Paul, October 12, 1886, as the 'Homestake Mine,' and situated in Swansea Cañon, near Shermantown, in the White Pine mining district, White Pine county, state of Nevada." A decree was duly entered in pursuance of this stipulation in favor of complainant. This decree quieted the title of the corporation against the adverse claim of Kind and Howell to the Homestake mine, and established and finally determined that Clarke owned the interest which he had conveyed to the corporation; that his deed, as well as the deed of Mrs. Robinson, to the corporation, was valid.

Various objections were made at the trial as to the admissibility and legality of the proceedings had in the state and United States courts. This court declines to review the proceedings had in the state courts. The parties had their day in court, and, if they did not avail themselves of all the defenses they might have made, it was their fault; and the errors, if any existed therein, cannot be availed of by this defendant or by the Rocco-Homestake Mining Company. Nor can they, or either of them, avail themselves of any irregularities or defects, if any, in the proceedings had in the matter of the estate of Eugene N. Robinson, or of the steps taken by Mrs. Robinson in acquiring her interest in the Homestake mine.

There are several other matters alluded to in the arguments of counsel, that, in the light of the conclusions reached, need not be referred to.

The truth is that the defendant has no valid defense to this action. It had no right to the stock. It was a mere custodian thereof. Its only interest was to protect itself against the claim and demand which it alleges was made upon it by the Rocco-Homestake Mining Com-

123 F.—59

pany to deliver the stock to it. The ordinary course was for the defendant to have deposited the stock in court, in order that proper steps might thereafter have been taken by the respective parties to establish their claim to the shares of stock. The defendant, however, chose to become a partisan on behalf of the Rocco-Homestake Mining Company, and set up a defense for it which is wholly without merit.

What amount of damages should, under the facts and circumstances of this case, be awarded to the plaintiff? No special damages were alleged or proven. The general allegation in the complaint is that she has been damaged in the sum of $15,000. She is, of course, entitled to recover the value of the shares of stock, with the accumulated dividends thereon at the time of her demand, which amounts to $10,300. I am of opinion that she is entitled to recover as damages not only the value of the property and accumulated dividends, but also a sum equal to legal interest on the same from the time of conversion. 1 Sedg. on Dam. (8th Ed.) § 316; New Dunderberg M. Co. v. Old, 97 Fed. 150, 153, 154, 38 C. C. A. 89, and numerous authorities there cited. Adding the legal interest, to wit, $951.75, to the sum above stated, makes a total of $11,251.75, which plaintiff is entitled to recover. Let judgment be entered in her favor for that amount, with costs and interest.