STATE OF MINNESOTA [1] v. FREDERICK WEYERHAUSER and Others.[2]

May 26, 1897.

Nos. 10,437—(48).

68 353
68 353
68 353
s72 519

## Taxation—Undervalued or Omitted Property—Constitutional Law.

Laws 1893, c. 151, provides for the taxation of property undervalued or unlawfully omitted from assessment, and for reassessment where there has been a gross undervaluation of such property. *Held*, that such law is constitutional.

Proceedings by the state of Minnesota against Frederick Weyerhauser and others to enforce payment of taxes for 1894. Judgment ordered discharging the lands from liability for taxes. Case certified from the district court for Itasca county, Holland, J. Reversed.

*C. L. Pratt*, for plaintiff.

No dispute is made as to the actual value of the lands during all the times mentioned in this proceeding, nor that they had, as a matter of fact, been grossly undervalued. Having been properly valued, and the county auditor having before him in 1894 the figures repre-

[1] STATE OF MINNESOTA v. MORTON D. HULL and others.

May 26, 1897.

Nos. 10,438—(49).

Proceedings by the state of Minnesota against Morton D. Hull and others to recover taxes for the year 1894. Judgment discharging the land from liability for taxes. Case certified from the district court for Itasca county, Holland, J. Reversed.

*C. L. Pratt*, for the State.

*J. B. Atwater*, for defendants.

Per Curiam. This case involves the same questions as those raised and decided in the case of State v. Weyerhauser, and is ruled by it.

Order reversed.

STATE OF MINNESOTA v. WENONA IRON COMPANY.

May 26, 1897.

Nos. 10,442—(50).

Proceedings by the state of Minnesota against the Wenona Iron Company to collect taxes delinquent in 1896. Judgment discharging the land from liability for taxes. Case certified from the district court for Itasca county, Holland, J. Reversed.

*C. L. Pratt*, for plaintiff.

*C. C. McCarthy*, for defendant.

Buck, J. This case involves the same questions as those raised in the case of State v. Weyerhauser, and is governed by the decision made therein.

[2] Reported in 71 N. W. 265.

8 M—23.

senting the actual assessable value of these lands, which, in the very nature of things, could not have increased in value to any appreciable extent in the preceding six years, and having before him also the lesser figures at which these lands had previously been assessed, and being bound to know from these figures that the lands had escaped their just proportion of taxes, his duty, as imposed upon him by law, compelled him to enter such lands for taxation during those six years at their proper assessable value. G. S. 1894, § 1631, makes it the duty of the auditor to enter on the assessment and tax books any real or personal property found by him to have been omitted, and to extend the taxes thereon for the years so found to have been omitted. It cannot with reason be said that because these lands had appeared upon the tax books that therefore they were not "omitted" and that this section does not apply. Under the state of facts in this case it is true that a large portion of the value of these lands had been omitted for these six years. The true intent of the tax laws is to compel each dollar of value to bear its just proportion of the public burden; if then these lands had been entered on the assessment lists at only a small proportion of their value, and thus they had escaped paying their just proportion of the tax, the owners cannot be heard to say that being on the lists they are not omitted, and thus defeat the end and aim of the tax laws. This section then authorizing the auditor to enter lands the value of which had been omitted, and then extend the arrearages of taxes thereon, it is not necessary for the auditor to give notice of his intention so to enter them. A land owner is not entitled to notice of assessment other than the commencement of proceedings to enforce collection of taxes. County v. Winona, 40 Minn. 512; County v. Barber, 31 Minn. 256; Scott v. Hinds, 50 Minn. 204; G. S. 1894, §§ 1588, 1631. The collection of delinquent taxes extended upon the assessment therein provided for is not the taking of property without due process of law. County v. Winona, supra. An act should not be declared invalid merely because inequality may result from its operation. Before courts can declare an act unconstitutional it should at least be apparent that it was not framed with regard to the constitutional requirements, or that it will produce inequality. State v. District, 33 Minn. 235. The defendants must prove prejudice, and that the lands were actually overassessed, and partially, unfairly,

and unequally assessed.   County v. Barber, supra;  Scott v. Hinds, supra.

*J. B. Atwater*, for defendants.

Laws 1893, c. 151, attempts to provide for the taxing of lands in any year, on account of taxes claimed to be due for some prior year, in two specific cases:   When the lands have been omitted from taxation in such prior year, and when the lands have been grossly undervalued in such prior year.   The fundamental idea or scheme of the latter part of the law is certainly a novel one.   There is not a semblance of judicial authority to support its legality.   The courts have held that lands may be assessed in one year for their proper proportion of the taxes of some prior year when they have been improperly omitted from the assessment roll, or when the original assessment has been held invalid.   2 Desty, Taxn. 646;  25 Am. & Eng. Enc. Law, 447;  County v. Winona, 39 Minn. 380, 40 Minn. 512, 42 Minn. 181.   But it is at once apparent that the retaxation provided for in the statute is radically different from either of these.   It is admitted that the lands here involved were not omitted from the assessment rolls in any year, but, on the contrary, they were regularly assessed and taxed for each of these prior years.   These assessments have not been held invalid, but on the contrary the full amount of the tax assessed has been paid by the land owner.   It is not claimed that there has been any deficiency in the public revenues which would necessitate the retaxation of lands and a collection of further taxes to provide for deficiencies in any of these prior years.   It is not claimed that these prior assessments are affected by any fraud, either on the part of the tax officers or of the landowners.   The scheme of retaxation here attempted is nothing more, in substance, than the state's reviewing, by its own ex parte action, a judicial proceeding between itself and the tax payer and then reversing the result of that proceeding.   No reported case, nor any other authority, holds that lands which have in any year been regularly assessed for the general taxes, and upon which these taxes have been paid, can be in some subsequent year retaxed on the sole ground that the valuation placed upon these lands by public officials was incorrect or inadequate.

The law is then unconstitutional because it attempts to grant a new trial of a judicial controversy previously tried and determined.

There is no dissent from the doctrine of Stanley v. Supervisors, 121 U. S. 535, that the assessment of lands, as conducted in this state, is a judicial proceeding. Cooley, Taxn. 363; Burroughs, Taxn. § 102; 2 Desty, Taxn. 648; 25 Am. & Eng. Enc. Law, 261. When the valuation and assessment of property have gone through the regular course, and the taxes have been paid, the same result follows as from the satisfaction of a judgment in an ordinary civil action, the rights of the parties as to the matter in litigation have become vested, and the final result of that litigation can only be attacked in a direct proceeding on the ground of fraud. It is sufficient to say of this statute that it entirely ignores these distinctions. According to its provisions it is not necessary to establish fraud as a preliminary to the reassesment. This reassessment may be had simply on the ground of a gross undervaluation by the assessing officers. But undervaluation, however gross, is not equivalent to fraud. In proper cases it may be some evidence of fraud, but it may also be the result of negligence or incompetency on the part of the assessing officers; that is, the law cannot presume fraud from the one fact of gross undervaluation. Shattuck v. Smith, 6 N. Dak. 56, and cases cited; Keokuk v. People, 161 Ill. 514. That the legislature cannot thus grant a new trial in the case of a judicial proceeding between two individuals, seems well established. Swift v. City, 37 N. Y. 511; Davis v. President, 21 Wis. 497; State v. Mayor, 37 N. J. Law 39; County v. Batchelder, 47 Minn. 512.

The statute is not due process of law because the landowner has no notice or opportunity to be heard on the primary determination of the valuation of his land. It is probably unnecessary at this late day to elaborate the proposition that a valuation of land for taxation cannot be made without some notice to the person affected. 1 Desty, Taxn. 597; 25 Am. & Eng. Enc. Law, 54; County v. Southern, 18 Fed. 885. The authorities are unanimous that an assessment once properly made cannot be changed to the prejudice of the landowner without notice to him. Meyers v. Shields, 61 Fed. 713.

The statute is in violation of the state constitution in that it abrogates art. nine, § 1, providing that all taxes to be raised in this state shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, and be equalized.

and uniform throughout the state. See State v. Tonella, 70 Miss. 701; Goold v. Lyon, 74 Iowa, 95; Charleston v. Kanawha, 41 W. Va. 658. It is also in violation of the fourteenth amendment to the federal constitution in so far as said amendment prohibits a state from denying to any person within its jurisdiction the equal protection of its laws.

BUCK, J. Since October 6, 1893, the defendants have owned a large number of pieces of real estate situate in the county of Itasca, in this state. Prior to that date, while other individuals owned those lands, they were assessed for each of the years from 1888 to 1893, inclusive, by the proper county officials of said county, pursuant to the provisions of the general tax laws of the state; and the taxes for each of said years were, before the same became delinquent, paid by the owners of said lands. Prior to January 1, 1894, it was made to appear to the governor of this state by a duly-verified complaint that a considerable amount of property in said county of Itasca had been grossly undervalued in the tax proceedings for those years; that thereupon and forthwith the governor did, in writing, appoint a competent citizen of this state, not a resident of said county, to ascertain the character, location, value, and ownership of the real and personal property in said county so omitted, underassessed, or undervalued, and such citizen, having duly qualified, proceeded forthwith to examine and report upon the subject, and did prepare duplicate lists of such lands as he determined had been so underassessed or undervalued, in the manner prescribed in Laws 1893, c. 151, § 1;[3] that thereafter, and prior to January 1, 1894, the said duplicate lists were filed with the state auditor and with the county auditor of Itasca county; that thereafter the county auditor and county assessor of Itasca county took the proceedings in regard to said lands described in said lists which are prescribed in section 2 of said chapter 151.[4]

All of said lands so owned by these defendants were returned as undervalued lands for each of said years from 1888 to 1893, inclusive, and were entered by the county auditor upon the real estate assessment books for the year 1894, and were assessed by the assessor of Itasca county at the respective values shown by said lists, and were also entered by the county auditor upon the assessment and tax books

[3] G. S. 1894, § 1632.   [4] G. S. 1894, § 1633.

for each of said years from 1888 to 1893, inclusive, and were by him assessed at the valuation and amount as shown by said lists to have been omitted or undervalued, and the arrearages of taxes by reason of said increased valuation were extended upon said assessment books. No notice of any of said proceedings in making said reassessment or revaluation of said lands, or in extending said taxes against said lands, was ever given by publication or otherwise to these defendants, then owning the same.

In the trial court, being the district court in and for said county of Itasca, the proceeding was by complaint in the form of the published delinquent tax list to enforce the collection of taxes for the year 1894, remaining delinquent and unpaid on the first Monday in January, 1896, together with back taxes assessed against the said lands of these defendants assessed thereon in accordance with proceedings taken under Laws 1893, c. 151; said delinquent tax list so forming the complaint in this proceeding being in the ordinary form as prescribed by the tax laws of this state, including summons, notice, and all the matters and things by law prescribed. The taxes so sought to be recovered against said lands in this proceeding are claimed to be due by reason of the reassessment so made pursuant to the provisions of said chapter 151 of the Laws of 1893, upon the ground that said lands in the prior assessment proceedings had been grossly undervalued.

The trial court found that the taxes claimed in this proceeding are the proper amount of taxes which would be due against said lands on account of said increased valuation if such taxes were valid and legal, and could be collected in such proceeding, and that such proceedings were in accordance with chapter 151 of the law quoted, and would be a legal charge against said lands so owned by the defendants, if said law was constitutional; but it held that said law was illegal and unconstitutional, and therefore that none of the taxes claimed in this proceeding were a legal charge against the said lands so described and owned by the defendants, and judgment was ordered entered that said lands be discharged from all liability for the taxes claimed in this proceeding. The case was duly certified to this court.

The importance of the question involved is at once apparent. Upon one side there was evidently an attempt to shield property from bearing its just burden of taxation, and on the other a drastic law seeking

to remedy the public wrong thus perpetrated. Whatever motive prompted the gross undervaluation of the property before the defendants became the owners, we must assume from the facts in the record that such undervaluation did exist, and to remedy this evil so far as possible was the intention of the legislature in passing Laws 1893, c. 151. Great wrongs are sometimes only remedied by drastic legislation, and no fine-spun theories should stand in the way of applying the remedy in such cases. The legislative intent and the legislative will should be upheld unless they impinge upon the domain of some constitutional prohibition. The contention of the defendants is that the law above referred to is unconstitutional upon the following grounds, viz.:

"(1) The law is in violation of section one of article three of the constitution of the state of Minnesota providing for the distribution of the powers of the government into three branches of legislative, executive, and judicial. (2) The law is in violation of section one of article nine of the constitution of the state of Minnesota providing for the equality and uniformity of taxation. (3) The law is in violation of section seven of article one of the constitution of the state of Minnesota, providing that no person should be deprived of his property without due process of law." "(5) The law is in violation of the fundamental principles of justice which underlie our system of state and national government."

For the purpose of raising these questions, the defendants interposed an answer to the proceedings to enforce the collection of taxes remaining delinquent, and which those in controversy were assumed to be, and the defendants do not dispute the plaintiff's contention that as a matter of fact the lands in question were grossly undervalued, or the correctness and regularity of all the proceedings raising only the question of the authority of the legislature to enact such a law. The several sections which constitute this law are found in G. S. 1894, commencing with section 1632 which, in part, reads as follows:

"Whenever it shall be made to appear to the governor of this state by a complaint in writing and under oath or by the finding of any court, the legislature or any committee thereof, that for any reason any considerable amount of property in any county in this state has been or may hereafter be improperly omitted from the tax lists and assessment roll of any such county for any year or years, or, if assessed, that the same has been grossly undervalued by the assessor

or other county officials, whether such valuation and assessment has or has not been reviewed or acted upon by the county board of equalization of any such county, he shall forthwith appoint in writing some competent citizen of this state, not a resident of such county, to ascertain the character, location, value and ownership of the real and personal property in any such county so omitted, underassessed or undervalued, who shall forthwith proceed to examine and report upon the subject and prepare a list or lists thereof in duplicate, showing therein the character, location, ownership and valuation of all such property, with the year or years for which the same or any part thereof has been omitted or undervalued; said list shall also show therein opposite each tract, piece or parcel of land or personal property undervalued or underassessed for any year or years thereupon in which the same was undervalued or underassessed, with the amount of such assessment, the actual and true value thereof at the time and for which the same was subject to and should have been assessed, together with the difference between the assessed and actual value thereof as so found. One of which duplicate reports or lists shall be by him filed with the county auditor of such county on or before the first day of January in the year in which any such assessment is to be made, and the other of said lists shall be by him filed within the same time with the state auditor."

Section 1633 provides that the county auditor, on receipt of such list, shall enter the same on the assessment books, as provided in the general tax law; and the assessors, on receiving from the county auditor said books, shall assess said property at its true value corresponding with said lists, and, when returned, the county auditor proceeds as under the general tax law. The law further provides that the taxes shall be a lien upon the lands so assessed, and may be collected as other taxes are by law collected.

We shall first discuss the third proposition of counsel, viz.: That the law is in violation of section seven, art. one, of the constitution, that no person shall be deprived of his property without due process of law. We need not spend time in discussing what is due process of law within the meaning of the constitutional provision referred to, because it has been repeatedly defined by the courts of this state and the United States, and our inquiry, therefor, need only be as to whether such provision, within the well-understood definition, has been violated in the case at bar. We are of the opinion that this question has been settled by the case of County v. Winona, 40 Minn. 512,

41 N. W. 465, and 42 N. W. 473, and affirmed on appeal to the United States supreme court, 159 U. S. 526, 16 Sup. Ct. 83. That was a case under G. S. 1878, c. 11, § 113, as amended by Laws 1881, c. 5, § 1, G. S. 1894, § 1631, providing for assessing taxes upon property for past years in which such taxes had not been assessed.

The objections now urged here were also urged in the case of County v. Winona, and answered by this court as follows:[5]

"Without following counsel through their exhaustive arguments upon this point, it is sufficient to say that it seems to proceed upon what we consider two false assumptions, to wit: First, that in proceedings in the exercise of the taxing power the property owner is entitled to notice and to be heard in each preliminary step in the proceedings pari passu with their progress; and, second, that under the tax law, G. S. 1878, c. 11, §§ 75, 79,[6] the defenses which he may interpose by answer, when the state applies for judgment, are so restricted as not to include all the objections which go to the merits of the proceedings. Where, as in the present case, the tax is levied on property not specifically, but according to its value, to be ascertained by some person appointed for that purpose, undoubtedly a party is entitled to notice and an opportunity to be heard; but we know of no case where it was ever held that a party was entitled to notice of, and to be heard in, each step in tax proceedings as it is taken. We doubt whether any tax law ever provided for any such thing.

The principle running through all the cases is that a law does not infringe upon the constitutional provision under consideration if the property owner has an opportunity to question the validity or amount of the tax either before that amount is determined or in subsequent proceedings for its enforcement. Whenever by law a tax is imposed upon property, and those laws provide for a mode of confirming or contesting it in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law. Davidson v. New Orleans, 96 U. S. 97; Hagar v. Reclamation, 111 U. S. 701, 4 Sup. Ct. 663.

This right is fully given under the sections of the tax law already referred to. Within 20 days after the last publication of the delinquent list any person may, by answer, interpose any defense or objection he may have to the tax. He may set up as a defense that the tax is void for want of authority to levy it, or that it was partially, unfairly, or unequally assessed. Board v. Nettleton, 22 Minn. 356. He

[5] 40 Minn. 518          [6] See G. S. 1894, §§ 1584, 1588.

may set up as a defense pro tanto that a part of a tax has not been remitted, as required by some statutes. Board v. Jessup, Id. 552. That the land is exempt, or that the tax has been paid. County v. St. Paul, 27 Minn. 109, 6 N. W. 454. That there was no authority to levy the tax, or that the special facts authorizing the insertion of taxes for past years in the list did not exist, or any omissions in the proceedings prior to filing the list, resulting to his prejudice. County v. Barber, 31 Minn. 256, 17 N. W. 473.

The filing of the list is the institution of an action against each tract of land described in it, for the recovery of the taxes appearing in the list against such tract, and tenders an issue on every fact necessary to the validity of such taxes. Chauncey v. Wass, 35 Minn. 1, 25 N. W. 457, and 30 N. W. 826. The only limitation or restriction upon the defenses or objections which may be interposed is that contained in section 79,[7] to the effect that, if a party interposes as a defense an omission of any of the things provided by law in relation to the assessment or levy of a tax, or of anything required by any officer to be done prior to filing the list with the clerk, the burden is on him to show that such omission has resulted in prejudice to him, and that the taxes have been partially, unfairly, or unequally assessed. This relates not to want of authority to levy the tax, but to some omission to do or irregularity in doing the things required to be done in assessing or levying a tax otherwise valid. Board v. Nettleton, supra. And certainly, in justice or reason, a party cannot complain that, when he objects to a tax on the ground of some omission or irregularity in matters of form, he is required to show that he was prejudiced."

On appeal, the United States supreme court, in affirming this decision, used this language:

"Questions of this kind have been repeatedly before this court, and the rule in respect thereto often declared. That rule is that a law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the fourteenth amendment to the constitution, which declares no state shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it either before that amount is determined or in subsequent proceedings for its collection. McMillen v. Anderson, 95 U. S. 37; Davidson v. New Orleans, 96 U. S. 97; Hagar v. Reclamation, 111 U. S. 701, 4 Sup. Ct. 663; Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921; Palmer v. McMahon, 133 U. S. 660, 10 Sup. Ct. 324; Lent v. Tillson, 140 U. S. 316,

[7] G. S. 1894, § 1588.

11 Sup. Ct. 825; Pittsburg v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114. That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribed the court in which and the time at which the various steps in the collection proceedings shall be taken, a notice by publication to all parties interested to appear and defend is suitable, and one that sufficiently answers the demand of due process of law. State Railroad Tax Cases, 92 U. S. 575, 609; Hagar v. Reclamation, 111 U. S. 701, 710, 4 Sup. Ct. 663; Kentucky Railroad Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57; Lent v. Tillson, 140 U. S. 316, 328, 11 Sup. Ct. 825; Pittsburgh v. Backus, supra. It cannot be doubted, under these various authorities, that in respect to the collection of these taxes ample provision is made for notice, and, therefore, that it cannot be adjudged that the owner is, for want thereof, deprived of his property without due process of law." Winona v. Minnesota, 159 U. S. 537, 16 Sup. Ct. 87.

In each of the cases cited it was held that the legislature may authorize different modes of assessment for different properties, providing the rate of assessment is the same.

Thus, while this mode of reassessment may have been somewhat different from that of some of the other lands in Itasca county as well as the mode of assessing the undervaluation of the same lands, if there was equality and uniformity of taxation, and due notice to the owners, thus making a substantial compliance with the constitutional method of taxation, we perceive no valid objections in such case to the mode pursued. Even under the mode which is challenged as unconstitutional, the figures and value of the land reassessed were adopted by the assessor of Itasca county as his assessment for 1894, and the board of equalization of said county considered and passed upon the same, and they were used in subsequent proceedings in extending the taxes upon the books. No objections were raised by the owners of said lands. If the amount of the assessment was not correct, the owners had an opportunity to appear, and prove it, because they were assessed with the taxes for 1894; and G. S. 1894, § 1631, makes it the duty of the auditor to enter on the assessment and tax books any real or personal property found by him to have been omitted for any prior year or years, and which thereby had escaped taxation. Other provisions of said section provide for enforcing the taxation of land which escaped assessment for prior years, and the last clause of said section is as follows:

"If any tax on any property liable to taxation is prevented from being collected for any year or years by reason of any erroneous proceedings or other cause, the amount of such tax which such property should have paid shall be added to the tax on such property for the current year."

Whether we consider the law of 1893 as cumulative to the general law or making it more complete for securing the collection of taxes upon lands omitted from assessment in previous years, it operated more perfectly to secure the collection of such back taxes, and make the lands bear their just share of the public burdens; and the law seems quite well settled that lands which have escaped assessment and taxation for prior years may be assessed or reassessed for back taxes, under appropriate tax legislation. County v. Winona, supra, and 42 N. W. 473, and authorities there cited. It is true that most of the decisions upon this question of reassessing property omitted from assessment and taxation relate to cases where the omission has been entire, and not partial, as in the case at bar; but such property which was grossly undervalued comes within the same reason for reassessing the same as though it had been entirely omitted.

The constitution requires that taxes to be raised in this state shall be as nearly equal as may be, shall have a cash valuation, and be equalized and uniform throughout the state. The true intent of the law is that each dollar's worth of property shall bear its just proportion of the public burdens, and when such property has escaped assessment to such an extent as to be deemed gross undervaluation, it has been omitted from the just requirements of the law. It is the value of the property, as well as the description of the property which has been omitted from assessment and taxation. If lands worth $20 or more per acre were assessed at $1 per acre, could it be reasonably said that they were not substantially omitted from assessment within the meaning of the law? The last clause of section 1631 seems to sustain this construction of the law, for it provides that if, by reason of any erroneous proceeding or other cause the amount of such tax is prevented from being collected on property liable to taxation, such amount which should have been so paid must be added to the tax on such property for the current year. The language and evident meaning of the statute is that lands shall not

escape a full and just taxation because of a partial or imperfect and erroneous assessment.

This brings us to the question raised by defendant's counsel that the law of 1893, chapter 151, is unconstitutional, because it attempts to grant a new trial of a judicial controversy previously tried and determined, and that, when the valuation and assessment of the property have gone through their regular course, and the taxes have been paid, the same result follows as from the satisfaction of a judgment in an ordinary civil action; that the subject-matter of the proceeding for each particular year has become res adjudicata, and the proceedings can only be attacked in a direct proceeding for fraud; that gross undervaluation is not equivalent to fraud, and that the proceeding provided for in the law of 1893 is a collateral, and not a direct, attack. It is to be observed that this is not an attack upon the original assessment, so as to·have the amount then assessed, and taxes thereon levied and paid, declared void. To that extent the amount is recognized as legitimate, and upheld. The taxing power, except as restricted by the constitution, is unlimited; and that a reassessment in certain cases is permissible is settled beyond controversy. Blackwell, Tax Titles, § 327, says that

"this power of reassessment and cure grows out of the necessities of the government and the nature of a tax lien, which admit no property in the citizen while a tax remains unpaid, and regard the land as a pledge, perpetual in its character, to pay the debts and current expenses of the government."

Now, the charge and the proof are that the state has been deprived of its just revenues by an act of gross undervaluation, not of one or two pieces of land, which might have been accidental, but of 89 pieces. Does the mere fact, then, that the assessor has gone through the form of assessing such a large quantity of land upon a basis found to be a gross undervaluation, operate as a judicial determination, so as to constitute it a bar to any further proceeding or relief in the premises? The case of County v. Batchelder, 47 Minn. 512, 50 N. W. 536, is cited by the respondent's counsel in support of the affirmative of this proposition. We think counsel is in error as to the rule there laid down, and we therefore quote that part of the decision bearing upon this point, that its whole force and effect may be clearly seen, viz.:

"Ordinarily, the citizen is concluded by the action of the officers upon whom the duty of assessment rests, if they act in conformity with the statute; and, notwithstanding the peculiar features of our tax law, providing for the rendition of a judgment in the tax proceedings, and giving the right to defend before the property owner is concluded by such judgment, it must still be considered that under ordinary circumstances the assessment of value, as determined by the assessor and the proper board of equalization, is final. It cannot have been the purpose of the law that the honest exercise of their judgment, unaffected by any extraordinary mistake, should be subject to review and reversal by the courts; or that a trial in court should be allowed in the case of every property owner who might consider that the taxing officers had erred in their estimate of the value of his property. But the law contemplates, as a necessary, indispensable step in the process of taxation, the honest exercise of the judgment of such officers, to the end that all taxable property may be assessed at its actual value, and so equality of taxation secured, so far as is reasonably practicable. If this requirement may be disregarded, and the mere will, prejudice, favor, or self-interest of the assessor, and not the certain and uniform rule prescribed by the statute, is to be allowed to control his action, the people would be subject to the grossest wrong, and the constitutional and statutory rule of equality in taxation would be of little avail.

It may safely be concluded that under this law, recognizing the right to defend in respect to taxes 'partially, unfairly, or unequally assessed,' it was contemplated that a property owner might show in defense, or in reduction of the tax charged upon his property, that the requirement of a bona fide assessment had been intentionally disregarded by the taxing officers, to the prejudice of such landowner. We go further, and hold, as was considered in respect to special assessments under a city charter in State v. Board, 27 Minn. 442, 8 N. W. 161, and State v. District, 29 Minn. 62, 11 N. W. 133, that, even though no intentional fraud be proved, it may be shown in defense that the error in the assessment was so gross that it cannot be accounted for upon any ground of mere misjudgment of value, but must have resulted, if not from fraud, from what in the case first cited above was called a 'demonstrable mistake of fact.' By proof of this nature it would be possible to show very clearly that there had really been no assessment of the property in question, and that the valuation on the assessment roll did not express any estimate or opinion of the assessor as to the value of the property."

In the case at bar the undervaluation by the assessing officer was found to be so gross that it cannot be accounted for upon any ground

of mere misjudgement of value, but that it was intentionally disregarded by the taxing officer. In that case it was held that, if the taxing officer acted in conformity with the statute, his action, under ordinary circumstances, would be final. But the assumption of facts upon which that conclusion was reached is entirely wanting in this case, and it was there further held that the law contemplates an honest exercise of the judgment of such taxing officer as an indispensable step, and this could not be disregarded. That is the contention of the appellant in this case. If the property owner could successfully defend as against such a proceeding, why cannot the state have relief against taxes partially, unfairly, and unequally assessed? We are of the opinion that gross undervaluation of such a large amount of different pieces of property implies bad faith, and should be regarded as equal to fraud. It was gross neglect of the assessing official in the performance of his public duty to make such an assessment, and gross neglect is either an intentional wrong or such a reckless disregard of security and right as to imply bad faith. Louisville v. Robinson, 4 Bush, 509. According to the civil and common law, gross negligence was regarded as equal to fraud and bad faith. McGrath v. Hudson, 32 Barb. 144.

We cannot regard this gross undervaluation involving a large territory as merely trivial or accidental, or a mere error in judgment of the assessor. Perfect equality of taxation is a practical impossibility, and property will occasionally be omitted, and this seems to be recognized by the constitutional provision that all taxes raised shall be as nearly equal as may be; but when an extensive territory is thus undervalued, greatly impairing the revenues of the county and state, it cannot be assumed or presumed that there was a bona fide assessment, but that it was an intentional disregard of the requirements of the assessment law, and a practical fraud on the rights of the county and state. In the case of Auditor General v. Jenkinson, 90 Mich. 523, 51 N. W. 643, it was held that the assessment might be invalid by reason of undervaluation, whether resulting from agreement with the owners of the property or the assessor's own disregard of his official duty. The proceeding, therefore, having been of such character as to imply bad faith on the part of the assessor, there was not such a conformity with the statutory requirements as to operate as a final

determination of the tax proceedings, and hence not a bar to the proceedings authorized by Laws 1893, c. 151.

We do not wish to be understood as holding in the case at bar that there might not be cases where, by reason of gross undervaluation, or an entire omission to properly assess, the state might not have a remedy other than by reason of actual or constructive fraud. The rule here applied is based upon the ground that such gross undervaluation constitutes such misconduct as to amount to bad faith, and is equivalent to fraud. It was not necessary to have the undervaluation set aside by the court. Such a proceeding was not sought by either party. The plaintiff insists that the original assessment should stand, and the defendants allege that the proceeding was regular and legal, and the taxes have been paid, and no one asks that such payments should be disturbed. The wrong which had been done could be properly and legally redressed by an appropriate legislative enactment, although the law is of a somewhat summary character. The act does not assume to set aside the proceedings which have been already had, but which have resulted in the state collecting only a part of its claim. It merely sets in motion new proceedings to collect the balance of its claim. The only objection to this would be that it splits a single claim or cause of action. But there is no constitutional obstacle in the way of doing this. It may be done if the statute permits it, as this act does.

In the case of Street v. Morrow, 87 Tenn. 406, 11 S. W. 348, it was held that a statute authorizing assessments of property omitted from the assessment made by the regular assessor, or an additional assessment, where the first one has been made upon an inadequate valuation, is not unconstitutional. In the opinion in that case it is said:

"We do not see any constitutional objections to such legislation. The objection that the actual payment of the tax as originally assessed should preclude any further or additional assessment, does not go to the constitutionality of the act. The objection is not of serious import in any view of it. The reply of the Circuit Judge is complete in every aspect of the question. He said: 'The constitution and laws prescribed that all property should be assessed according to its value, and if, by the misfeasance, non-feasance, or mistake of the Assessor, it is not assessed according to its value, but upon an arbitrary basis fixed by the Assessor at far less than its value, why should the

tax debtor escape simply because he has made payment? \* \* \*
It may be that such a law will work inconvenience and annoyance to
the citizen, but all tax laws are odious and vexatious. It is said the
citizen ought to know when he is through with the tax gatherer, but
he will know when he has paid his taxes on his property according to
its value. He will know then he is secure against reassessment, and
the law will protect him.' "

So in this case part payment of a just tax does not render the law
unconstitutional because it compels full payment of a tax according
to the value of the property, whether such inadequate assessment
was the result of misfeasance or nonfeasance of the assessor. When
full payment according to a true valuation has been made by the
owner, then he is protected by the provision of the constitution re-
quiring equality and uniformity of taxation. To this requisite he
must submit, because all property should be assessed and taxes paid
according to a true valuation.

The next point raised is that the law of 1893 is in violation of sec-
tion one, art. nine, of the constitution of Minnesota, relating to equal-
ity and uniformity of taxation throughout the state, and requiring
taxes to be levied upon a cash valuation. As we have already stated,
it is competent for the legislature to authorize different modes of as-
sessment, providing the rate of assessment is the same. That the
original assessment did not conform to the requirements of this con-
stitutional provision must be conceded, although it is not now as-
sailed as being void, but that, being an undervaluation, it was not an
equal and uniform assessment in the first instance. The defendants do
not find fault with this condition of the original assessment. As its in-
equality consists in being originally assessed for a sum grossly be-
low its equal and uniform cash value compared with other lands, the
defendants do not feel thereby aggrieved, and the only grounds
which we can discover for assailing the mode of reassessment author-
ized by the law of 1893 is that the state is seeking to impose such
additional taxation upon the property as to make the entire taxation
equal and uniform with that of the taxes imposed upon other lands.
This is not violating the constitution, but upholding it.

We must assume that the other property in Itasca county was as-
sessed upon the basis of equality and uniformity, and, if this property
was not so assessed, then a great wrong was attempted upon the

68 M—24.

county and state, and the latter is now reaching out to remedy this wrong, and seeking to correct it, and make the taxation upon all the property in Itasca county equal and uniform, and not attempting to violate and destroy the rule. Other property owners do not, as they cannot reasonably, complain of this proceeding on the part of the state. Their own property has been assessed according to law and the strict requirements of the constitution, and it is for their interests, as well as that of the public, that the defendants' property should be taxed upon the same principles of equality and uniformity as their own. There is no necessity that the law should provide for a general revaluation. The other property has already been legally and properly assessed, and, as neither the owners nor the state nor county can complain of an assessment legally and constitutionally made, it is no concern of these defendants, and they have no right to interfere with the assessment of other people's property thus lawfully made. If the revaluation is in spots, as counsel claims, it is because these spots are tainted with intentional wrongdoing or gross neglect, whereby a great number of these spots are found, covering an extensive territory grossly undervalued by the assessor; and, if the government cannot reach such injustice and wrong, it is a startling exhibition of its organic weakness.

It is claimed that there is no provision for such reassessment taxes being equalized. It is one of the very objects of the act to equalize them, and place all persons who owe the government an honest debt upon an equal footing. The necessities of the government require a certain amount of taxes that its functions may be properly sustained; and neither intentional wrongdoing nor fraud nor fine-spun technicalities should stand as a barrier in making each owner of property bear his just proportion of the burden of the government, which protects such property as well as himself. Even counsel did not claim in his argument but that the property had been grossly undervalued, yet his contention seemed to be that the public, not the individual, must suffer in such case, because the acts of the assessor, being judicial in their nature, were final.

We are not willing to yield to the doctrine that such a palpable intentional violation of law in tax proceedings, before the final judgment of the court, is beyond review. In raising the valuation of the defendants' property, it was placed at just the value at which it

should have been fixed in the first place. There is no dispute about that fact. If there was difficulty in getting at the value of the property by reason of the necessity of going back several years in order to ascertain such value, that fact would not destroy the validity of the law. It cannot be assumed for the purpose of invalidating the statute that it authorized an unconstitutional method of assessment. County v. Winona, 40 Minn. 512, 41 N. W. 465, and 42 N. W. 473. In the latter case it was further said:

"Moreover, if the auditor, either from mistake or negligence, makes an unfair or unequal assessment, the owner has an opportunity of being heard, and having this corrected in the proceedings instituted to obtain judgment against the land, and this fact is also an answer to the suggestion, so frequently made by appellant, that the assessment is made arbitrarily by the auditor, without notice or opportunity to be heard on the part of the owner."

This language is applicable to the case at bar. If the officer or person appointed by the governor to ascertain whether the assessor or other county officials have grossly undervalued certain property has made a mistake, or has been guilty of negligence or fraud, in reassessing such property, the owner has an opportunity to be heard, and show such fact, and thus has a method of redress against every illegal assessment.

In respect to the question that the lands have changed ownership since the assessment, and that defendants have purchased the property since the original assessment and payment of the taxes by the then owners, it must be conceded that an apparent hardship has been produced. Upon this point Blackwell on Tax Titles, § 951, says:

"Individual hardship may sometimes be produced, as where lands have changed hands since the time when the tax should have been collected from it; but similar injustice in particular cases is incident to all taxation, and will not avoid such a reassessment."

It is certainly no greater hardship that property should be made to bear its just proportion of taxation than that others should be compelled to pay more than their just share because of the omission to place an assessment upon it required by law. Such an objection could be urged with equal force against G. S. 1894, § 1631, authorizing the county auditor to enter upon the assessment and tax books a list of property, real or personal, which shall be discovered to have

been omitted, and to assess the same, and extend all arrearages of taxes properly accruing against such property. In the case of Tallman v. City, 17 Wis. 73, the court, in passing upon this question, used this language:

"Under these provisions it is very apparent a tax might be levied and collected upon lands which had by purchase become the property of persons other than those who owned them when the tax should have been paid. Undoubtedly, analogous provisions will be found in many other revenue laws of our sister states, which inevitably operate oppressively in individual cases. And still this power of correcting defective assessment rolls, on the part of the public authorities, is a salutary and highly beneficial feature of our system of taxation. It is not to be abandoned because in some instances it produces individual hardship. Every taxpayer is interested in having the property list as perfect as possible, and therefore power to correct omissions and inequalities in the rolls is intrusted to some of the taxing officers."

The right to pass such curative laws grows out of the necessities of the government itself. If such laws can cure defective assessments where there has been an entire omission, there is no sound principle why they cannot cure a defect where it exists in part. It is not the individual owner who is compelled to answer for such omission, only as he pays for a reassessment of his property; and, if he buys property which has unjustly escaped taxation, he takes the risk that the legislature may exercise its far-reaching power, limited only by the constitution. Property should not and cannot escape its just share of taxation by merely changing owners. It is not the individual which the government seeks, upon whom to impose the taxes, but the property itself, a proceeding, as it were, in rem. If it fails once through the wrong of its officials, it may try again until it has accomplished its purpose. The undervaluation of the lands in question was a direct violation of the statutory law and the constitution. The reassessment righted this wrong in justice to other taxpayers and the government. In our opinion, Laws 1893, c. 151, is constitutional, and the order of the trial court that judgment be entered for the defendants discharging said lands described from all liability for taxes claimed in the proceedings should be reversed.

So ordered.