IN THE MATTER OF PROCEEDINGS TO ENFORCE PAYMENT
OF TAXES ON REAL ESTATE REMAINING DELINQUENT
ON THE FIRST MONDAY IN JANUARY, 1916, FOR
THE COUNTY OF POLK.[1]

December 17, 1920.

No. 21,886.

**Municipal sewer—assessment by sewer district not unconstitutional—due process—limit of taxation.**

The home rule charter of Crookston provides for the payment of the cost of construction of relief sewers by a levy upon the taxable property of sewer districts into which the council is authorized to divide the city and not by special assessments against the property. There is no constitutional invalidity in a provision for paying for a sewer by general or district taxation instead of by local assessment. There is not given the property owner an opportunity to be heard upon the proposed division of the city into sewer districts, nor upon the propriety of constructing relief sewers, nor upon the levy to pay therefor. The levy for relief sewers added to the levy for the general fund exceeds the eight mills limited by the charter for the general fund. It is _held_:

(1) That neither the charter nor the legislative act of the council dividing the city into sewer districts is unconstitutional for want of due process.

(2) That the charter provision providing for the construction of relief sewers, and the levy of taxes to pay therefor, are not invalid for want of due process.

(3) That in computing the eight mills levy limited by the charter for the general fund the levy for relief sewers is not to be included. This levy is for a special district fund and not for the general fund.

In proceedings to enforce the payment of taxes on real estate remaining delinquent on the first Monday in January, 1916, in Polk county, Eva S. Hoglund and ten others filed separate answers objecting to a special assessment for a relief sewer constructed by the city of Crookston. The matter was heard in the district court by Grindeland, J., who made findings and ordered judgment against the respective

[1] Reported in 180 N. W. 240.

persons for the amount of the tax levied, with penalties and interest added. From the judgment entered pursuant to the order for judgment, Eva S. Hoglund and others appealed. Affirmed.

*W. A. Marin*, for appellants.

*James E. Montague*, County Attorney, for respondent.

DIBELL, J.

This is a proceeding to enforce the payment of taxes on real estate delinquent on the first Monday in January, 1916, in the county of Polk. There was judgment for the state. The defendants, owners of real estate in Crookston, appeal.

The question is upon the validity of a levy for relief sewers included in the judgment. Crookston is governed by a home rule charter ratified in 1906 and amended in 1907. To an understanding of the controversy a brief reference to some of its provisions is necessary.

Chapter 8, §§ 91-101, relates to special assessments for local improvements. It provides for levying assessments "upon the property fronting upon such improvements * * * or upon the property to be benefited by such improvements, or both, without regard to the cash valuation" thereof. There is a notice and hearing upon proposed improvements. There is an appeal to the district court from an order making or refusing to make an improvement. There is a hearing upon assessments. The chapter contemplates that special assessments may be made for sewers.

Chapter 10, §§ 113-118, refers to sewers. Apparently the general provisions of chapter 8, relative to notice and hearing, are applicable when it is proposed to assess locally for sewers. Sections 115 and 116, as slightly amended in 1907, provide for assessing against property, on the basis of frontage, the cost of sewers not exceeding 15 inches in diameter. The cost of sewers larger than 15 inches, in excess of the cost of a fifteen inch sewer, is paid out of the permanent improvement fund. Relief and outlet sewers are also paid out of the permanent improvement fund. In the amendments of 1907 a section, designated section 118½, in the following words, was added:

"Sec. 118½. The city council may divide the city into sewer dis-

tricts, and after establishing such districts the cost of constructing main sewers in excess of the cost of a fifteen inch sewer and the entire cost of constructing outlet and relief sewers in any one of said districts in case of sewers not theretofore ordered and the cost of constructing sewers across streets and alleys and along property exempt from taxation by law in such district shall be assessed against all the property of such district which may be subject to taxation, but in case any such main, outlet, or relief sewer be constructed wholly or partly for the benefit of property outside of such district, then the whole or such part of the cost of construction of such main, outlet or relief sewer, as might be otherwise taxed to said districts in which the same is constructed shall be assessed against the property situate in the district or districts benefited thereby, in such proportion as may be determined by the city council, and all such moneys so assessed against the property generally in such districts when collected shall be placed in a special district fund and in cases where the cost of construction shall have been advanced out of the permanent improvement fund, that fund shall be repaid. Provided, that whenever any outlet or relief sewer shall be tapped or used by the owner of any adjacent property, the cost of construction not exceeding that of an ordinary fifteen inch sewer along the lot or parcel of land so using said sewer shall be at once assessed against said lot or parcel of land and when collected shall be paid into the special district fund."

The section quoted introduces two features important in this controversy. One is the division into separate sewer districts. The other, there being such division, is the spreading of the cost of relief and outlet sewers over the taxable property of the district, instead of paying it out of the permanent improvement fund which is raised by general taxation, and in the event of a sewer being for the benefit of more than one district the cost is equitably apportioned. There is no constitutional objection to paying for sewers by a general levy or a levy against districts instead of by special assessment. 4 Dillon, Mun. Corp. § 1430, et seq., and cases cited; 2 Cooley, Taxation, 1202, et seq.; Webster v. Fargo, 181 U. S. 394, 24 Sup. Ct. 623, 645, 45 L. ed. 912, 916; French v. Barber Asphalt Paving Co. 181 U. S. 324, 21 Sup. Ct. 625, 45 L. ed. 879.

No hearing is provided upon the advisability of a division into sewer districts nor upon the propriety of constructing relief sewers nor upon the question of a levy.

Another provision of the charter is as follows: "The city council shall annually levy taxes upon the taxable property of the city as shown by the assessment roll for the previous year as follows: 1. Not to exceed eight mills on the dollar for the general fund." Section 84. The same section provides the limit of the levy for the permanent improvement fund.

The council by ordinance divided the city into sewer districts. No complaint is made of the division, except that it was without notice. Notice was not given of the proposed construction of relief sewers nor of the levying of taxes therefor. The levy for taxes for the general fund and for relief sewers exceeded eight mills on the dollar.

The defendant property owners make three claims:

(1) That the charter provision authorizing the council to divide the city into sewer districts is unconstitutional for want of due process, because notice of a proposed division and an opportunity to be heard is not given property owners.

(2) That the charter provision authorizing the construction of relief sewers and the levy of taxes to pay therefor without notice to property holders and an opportunity to be heard is unconstitutional for want of due process.

(3) That since the levy of taxes for the general fund, together with the levy for relief sewers, exceeds eight mills on the dollar, the levy is invalid under the provision of the charter quoted.

The first two claims present constitutional questions; the third a question of the construction of the charter.

1. The division of the city into sewer districts by the council is legislative, not judicial. Notice and an opportunity to be heard are not contemplated and are not given. Neither the charter nor the legislative act of the council is invalid for want of due process. Hancock v. City of Muskogee, 250 U. S. 454, 39 Sup. Ct. 528, 63 L. ed. 1081, and cases cited; Mount Saint Mary's Cemetery Assn. v. Mullins, 248 U. S. 501, 39 Sup. Ct. 173, 63 L. ed. 383.

A legislative act may be so arbitrary and oppressive and such an abuse of legislative discretion as to be constitutionally invalid. If so, relief against it is given. Myles Salt Co. v. Board of Commrs. of I. & St. M. D. D. 239 U. S. 478, 36 Sup. Ct. 204, 60 L. ed. 392, L.R.A. 1918E, 190; Houck v. Little River Drainage Dist. 239 U. S. 254, 36 Sup. Ct. 58, 60 L. ed. 266; Hancock v. City of Muskogee, 250 U. S. 454, 39 Sup. Ct. 528, 63 L. ed. 1081, and cases cited. It may. be noted that section 172 of the charter authorizes any taxpayer of the city to maintain an action to test the validity of a tax or local assessment.

Whether the legislative power of the council under a home rule charter differs from that vested in a common council by the common legislative grant, we need not discuss. The point is made in the briefs and a consideration is had in St. Louis v. Western Union Tel. Co. 149 U. S. 465, 13 Sup. Ct. 990, 37 L. ed. 810, which is cited in State v. District Court of Ramsey County, 87 Minn. 146, 91 N. W. 300. Reference is made to the matter in Withnell v. Ruecking Const. Co. 249 U. S. 63, 39 Sup. Ct. 200, 63 L. ed. 479, and in other cases.

2. The property owner is entitled to notice and a hearing before his property can be subjected to a tax. He is not entitled to a notice and a hearing at every stage of the tax proceeding, nor to notice that an enterprise is about to be undertaken which will result in taxation, nor to notice of the levy of a tax. Due process does not require all this.

"The principle running through all the cases is that a law does not infringe upon the constitutional provision under consideration if the property owner has an opportunity to question the validity or amount of the tax either before that amount is determined, or in subsequent proceedings for its enforcement. Whenever by law a tax is imposed upon property, and those laws provide for a mode of confirming or contesting it in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law." County of Redwood v. Winona & St. Peter Land Co. 40 Minn. 512, 518, 42 N. W. 473, 475.

The filing of the delinquent list is the commencement of a suit. No-

tice is given. The taxes levied for relief sewers are included in the delinquent list and the property owner may defend. State v. Board of P. W. of City of Red Wing, 134 Minn. 204, 158 N. W. 977, and cases cited. There is not want of due process. City of Duluth v. Dibblee, 62 Minn. 18, 63 N. W. 1117; State v. Weyerhauser, 68 Minn. 353, 71 N. W. 265; State v. Weyerhauser, 72 Minn. 519, 75 N. W. 718; Williams v. City of St. Paul, 123 Minn. 1, 142 N. W. 886; Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. ed. 569; Embree v. Kansas City & Liberty Boulevard Road Dist. 240 U. S. 242, 36 Sup. Ct. 317, 60 L. ed. 624; Mount Saint Mary's Cemetery Assn. v. Mullins, 248 U. S. 501, 39 Sup. Ct. 173, 63 L. ed. 383; Weyerhauser v. Minnesota, 176 U. S. 550, 20 Sup. Ct. 485, 44 L. ed. 583.

3. The levy for sewers added to the levy for the general fund exceeds eight mills on the dollar. It is claimed that the levy is therefore in contravention of the charter and invalid.

The provision is that the tax levied by the council shall not "exceed eight mills on the dollar for the general fund." The relief sewer fund is not a general fund. It is called by the charter "a special district fund." Section 118½. The trial court terms the tax "a general tax for a special fund." It is not a general tax for a general fund. It is a general tax raised on all the property of the district for the construction of a relief sewer. Before the amendment the cost of relief sewers was paid out of the permanent improvement fund. Provision for a levy for a permanent improvement fund is made in the charter and it is something apart from a levy for the general fund. Section 84. The funds collected under section 118½ go into a district fund. The sewer relief levy is not to be considered in computing the eight mills limitation of the charter upon a levy for the general fund, for it is not a levy for that fund.

Judgment affirmed.