EDWARD RILEY and DOROTHY E. RILEY, his wife, Plaintiffs, v. T. EARL BANKS, GEORGE T. CLARK, JOHN J. HARTNETT, Commissioners, comprising the Levy Court of New Castle County, THE LEVY COURT OF NEW CASTLE COUNTY, Defendants.

(*October* 19, 1948.)

RICHARDS, C. J., TERRY, CAREY, PEARSON and LAYTON, J. J., sitting.

*John S. Walker* for Plaintiffs.

*Henry M. Canby* and *Clement C. Wood* for Respondents.

Superior Court for New Castle County, Civil Action No. 473.

RICHARDS, C. J.:

What constitutes due process under the Federal and State Constitutions, is a question which has often been passed upon by the Courts. In the case of *English v. Mayor and Council of City of Wilmington*, 2 *Marv.* 63, 37 *A.* 158, the Court of Error and Appeals of this State held, where the Legislative Enactment names certain persons as assessors or commissioners, to view the premises of those interested in work proposed to be done, for the purpose of determining the benefits to be received and make an assessment in proportion thereto, the owner of the premises is entitled to notice and an opportunity to be heard; but where the Legislature provides for a special assessment for local improvement, or adopts some definite standard for determining the benefits and corresponding burdens, no notice is required. It would be very difficult to give a definition of due process which would cover all cases. The following definition is given by Mr. Justice Fields, in *Hagar v. Reclamation District No.* 108, 111 *U.S.* 701, 4 *S. Ct.* 663, 667, 28 *L. Ed.* 569, "by 'due process' is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, it must

give them an opportunity to be heard respecting the justice of the judgment sought. The clause in question means, therefore, that there can be no proceeding against life, liberty, or property which may result in the deprivation of either, without the observance of these general rules established in our system of jurisprudence for the security of private rights." In the same case it was held that a law which prescribes the time when complaint will be heard to an assessment on property according to its value, gives sufficient notice, even though it may be followed by a sale of the property, if the assessment is not paid.

■ Paragraph five of the Act, 45 *Del. Laws, c.* 113, provides that a hearing to fix the boundaries of the proposed sanitary district shall be held within thirty days after the petition therefor is received by the Levy Court, which shall be previously advertised for at least ten days, by notices posted in four of the most public places in said proposed district and in a newspaper published in the county, having a general circulation, once each week for two weeks immediately preceding the week in which the hearing is to be held. It requires that all interested persons, officials, residents, voters, taxpayers, property owners or other persons or corporations affected by the petition shall be heard. This provision for notice and opportunity to be heard, which covers the entire county, is sufficient so far as the question of fixing the boundaries of the proposed district is concerned.

■ Paragraph six of the Act provides, that after the public hearing has been held and the boundaries fixed by the Levy Court, it shall direct the County Engineer or Consulting Engineer, to make an estimate of the costs of the proposed construction and also an approximate estimate of the assessment per front foot including the amount necessary to take care of interest, amortization and maintenance costs. Said construction estimates and assessment

estimates to be advertised in the same manner as provided in paragraph five for advertising the public hearing on the question of fixing the boundary. The notice thus provided must precede the election at which the voters residing within the boundaries vote upon whether the district shall be established or not. The election itself must be advertised in advance in like manner as the public hearing. So far as the estimates and the election are concerned, the provisions for notice are sufficient.

Paragraph twelve of the Act empowers the Levy Court to levy a special assessment for the express purpose of paying the interest on the bonds, their retirement, and the maintenance costs, the same to be in addition to the calculated assessment per front foot of the average installed cost of an eight inch sewer in the district, to be paid by property owners for sewers immediately serving said property owners. The Act fails to provide for notice of this assessment, or to give the interested parties an opportunity to be heard. It might well be argued that this constitutes a taking of property without due process of law, if it were not for what is contained in paragraph twenty of the Act and certain recognized legal principles applicable thereto.

Said paragraph twenty provides that the total assessment for each year shall be sufficient to raise an amount which will provide for the retirement of the bonds, pay the interest and maintenance charges, and pay for the improvements and necessary general expenses of the sanitary district. It then specifies that the Levy Court shall apportion the assessment against the property in the sanitary district directly or indirectly benefited, in proportion as nearly as may, to the benefits derived. The property against which the assessment is levied is then made liable for the payment thereof in the same manner that it is liable for the payment of other county taxes.

Plaintiffs concede that due process would be afforded, if in a suit by the county to collect the assessment thus imposed, an opportunity would be afforded them to interpose all available defenses to the validity of the assessment or to the amount. Nevertheless, they contend that in at least one of the remedies provided by law for the collection of the assessment, that is, by attachment, they would be foreclosed from interposing any defense whatsoever. Under such circumstances they rely upon *Scott v. Toledo*, (*C.C.*) 36 *F*. 385, 1 *L.R.A.* 688 for the proposition that the act in question is invalid for failure to provide due process. There, the Court held that although in two of the three available methods for the collection of taxes (by suit and by procedure to enforce a lien) the notice required would constitute due process of law; nevertheless, the act was invalid because by the third collection method (distraint of personal property) there were no adequate provisions for notice. We think the instant case is distinguishable in substance from the Toledo case.

At the present time, there are three methods for the collection of county taxes in New Castle County. However, one of these, the "Monition" method, was not enacted until 1947, 46 *Laws of Del. Chap*. 133, and both sides properly concede that because of its later enactment, this method is not available for the collection of assessments under the Sanitary District Act. The only methods available for collection under the latter act are an action of debt, *Rev. Code of Del*. 1935, § 1360, and attachment proceedings, *Rev. Code*, § 1351. When the Receiver of Taxes, the officer authorized to make collections proceeds by an action of debt, jurisdiction in personam or quasi in rem must be obtained by appropriate procedures. The statute providing for the attachment method requires an attachment or seizure of property and directs that "Notice of said attachment shall also be given to the defendant whenever practicable."

It then prescribes various means of notification (which we find reasonable) and continues "but the failure to give said notice shall not divest the said Court or the said Justice of the Peace before whom said proceedings were instituted of jurisdiction to hear and determine the said proceedings". Notwithstanding this latter clause, we think that the necessity of making a seizure of property and the direction to give notice "whenever practicable" satisfy the due process requirements for notice. The attachment statute provides that a defendant may within ten days after the return of the attachment, file an affidavit denying the demand of the plaintiff in whole or in part and in case of such denial, the issue must be tried. There having been no previous notice and opportunity to challenge the assessment, a defendant may raise any defenses which he has regarding the assessment in either the action of debt or the attachment proceeding. The requirements for obtaining jurisdiction in an action of debt and the provisions for seizure and notice in the attachment (quasi in rem) proceedings afford the defendant sufficient notice and opportunity to be heard to comply with the constitutional requirements of due process.

*Hagar v. Reclamation District No.* 108, 111 *U.S.* 701, 4 *S. Ct.* 663, 28 *L. Ed.* 569. *Winona & St. Paul Land Co. v. Minnesota,* 159 *U.S.* 526, 16 *S. Ct.* 83, 40 *L. Ed.* 247; In re Delinquent Polk County Real Estate Taxes, 147 *Minn.* 344, 180 *N.W.* 240; *Mudd v. Wehmeyer,* 323 *Mo.* 704, 19 *S.W.* 2d 891; *Ownbey v. Morgan,* 256 *U.S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837, 17 *A.L.R.* 873.

We will now consider the objection taken to the proceeding on the ground that the petitions filed with the Levy Court, and the action taken thereon, fail to comply with the provisions of the statute.

We find the general rule to be, that statutes pro-

viding for local improvements and assessments upon the property to be benefited thereby, must be strictly construed and given an interpretation favorable to the owner of the property to be assessed.

*City of New Haven v. Fair Haven & Westfield R. Co.,* 38 *Conn.* 422, 9 *Am. Rep.* 399; *Chicago, R. I. & P. R. Co. v. City of Ottumwa,* 112 *Iowa* 300, 83 *N.W.* 1074, 51 *L.R.A.* 763; *City of Birmingham v. Wills,* 178 *Ala.* 198, 59 *So.* 173, *Ann. Cas.* 1915B, 746; *Meyer v. City & County of San Francisco,* 150 *Cal.* 131, 88 *P.* 722, 10 *L.R.A.* (*N.S.*) 110; *Mayor & City Council of Baltimore v. Porter,* 18 *Md.* 284, 79 *Am. Dec.* 686.

▮▮▮ Our attention is first directed to paragraph four of the Act which states, that fifty or more legal voters residing in a proposed sanitary district, may petition the Levy Court to submit the question of organizing a sanitary district to the legal voters residing in said proposed district. In this proceeding two petitions were filed with the Levy Court, one by persons representing themselves to be legal voters of a district designated as Holly Oak Terrace and vicinity, and one by persons representing themselves to be legal voters of a district designated as Gwinhurst and vicinity; each of said petitions requested the Levy Court to submit to the legal voters of the district the question of organizing a sanitary district to be known as Quarryville Sanitary District. The argument was made that because two petitions were filed with the Levy Court, it was necessary for the Levy Court to establish two separate sanitary districts but we cannot agree with that contention. Each petition asked that the question of establishing a sanitary district, to be known as Quarryville District, be submitted to the voters designated in the petition. We cannot see any reason why the Levy Court cannot combine two contiguous districts into one sanitary district provided that the

other requirements of the Act are complied with. A close examination of said petitions discloses that the petition signed by persons representing themselves to be legal voters of Gwinhurst and vicinity contains the signature of only forty six persons, and not fifty, as the Act requires. If only one petition had been filed seeking to establish a sanitary district to be named Quarryville Sanitary District, and said petition did not contain the signature of fifty persons, as required by the Act, the defect would be fatal; but where there are two petitions as in this case, each seeking to establish the same sanitary district to be known as Quarryville Sanitary District and one of them does contain the signature of fifty persons, as the petition signed by persons representing themselves to be legal voters of Holly Oak Terrace and vicinity does, that should be sufficient if other necessary provisions of the Act are met. The objection was taken to the petitions on the ground that it does not appear that the signers were residents of the sanitary district proposed to be established. The Act requires that the signatures to the petition shall be acknowledged by each signer, or proved by the oath of a witness who shall swear that he knows the signer and that he signed the petition in the presence of said witness. An examination of the petitions reveals that the address of each signer is given but the signatures are not acknowledged. It does appear, however, that each petition is accompanied by the oath of a witness to the effect that the witness knew each signer and that the petition was signed by each signer in the presence of said witness. This is sufficient to comply with the Act.

A further objection to the proceeding was made on the ground that the petitions do not contain a description of the proposed sanitary district. The Act expressly provides, that the petition shall contain a description of the proposed district which shall be accompanied by a map,

drawn to scale, showing the boundaries of said proposed district and outlining the limits of any incorporated areas which may be included. The petitions in question describe the territory to be included in the sanitary district to be established, as Gwinhurst and vicinity and Holly Oak Terrace and vicinity. It must be admitted that this is not very definite. We think that the territory to be included in an undertaking of this character should be described with greater particularity. The plot which accompanies said petitions does show all of the area to be included which supplies the deficiency in the descriptions contained in the petitions. Therefore the descriptions contained in petitions, together with the accompanying plot, sufficiently describe the area to be included in the proposed drainage district.

We now come to the question of the sufficiency of the notice of the hearing to determine the boundary of the proposed sanitary district. This notice has been attacked on the ground that it stated that it was posted "in accordance with House Bill No. 359", without specifying at what session of the General Assembly said bill was passed. It undoubtedly would have been much better to have referred to the session of the General Assembly at which the bill was passed in addition to the number, but the failure to do this is not a fatal defect. Anyone desiring to examine the statute would be able to find it but it might take a little longer to do so.

The notice was attacked on the further ground that it describes the area to be included in the proposed sanitary district to be called Quarryville Sanitary District, as "Holly Oak Terrace and vicinity", and does not refer to "Gwinhurst and vicinity". Under the provisions of paragraph five of the Act, upon the receipt of a petition for the organization of a sanitary district the Levy Court is required to set a date for a public hearing on the question of the

location of the boundaries of the district, notice of which is required to be given to all interested persons, officials, residents, voters, taxpayers, property owners or other persons or corporations in any way affected by the granting of said petition, who shall be heard on said question of the location of the boundaries of the district. In this case two petitions were filed with the Levy Court, one by the legal voters in the District described as "Holly Oak Terrace and vicinity", and one by the legal voters in the District described as "Gwinhurst and vicinity"; each of said petitions asked that a sanitary district be established to be known as "Quarryville Sanitary District". The notice given by the Levy Court of the hearing on April 16, 1946, concerning the boundaries of the proposed sanitary district, to be called Quarryville Sanitary District, expressly stated that it was to include Holly Oak Terrace and vicinity and did not mention Gwinhurst and Vicinity or any other territory to be included in said sanitary district. It is conceded that Gwinhurst is contiguous to Holly Oak Terrace but notice as above described is not sufficient notice to the interested persons, officials, residents, voters, taxpayers, property owners or corporations of Gwinhurst and vicinity who might be interested in the boundaries of the proposed sanitary district. This notice was not accompanied by a plot showing the territory to be included as were the original petitions filed with the Levy Court. The only information concerning the boundaries of the proposed sanitary district which a resident and legal voter of Brandywine Hundred could have obtained from the notice which was given was that it was to include Holly Oak Terrace and vicinity. The location of the communities involved is not such as to make this reference sufficiently informative of the territory proposed to be included in the district. The notice did not meet the requirement of the act and consequently all of the proceedings thereafter were unlawful.

Other objections were taken to the course followed in this proceeding which we do not think it necessary to consider.

We are of the opinion that the proceeding taken under the above-mentioned notice, and all proceedings taken thereafter, are invalid, and we direct that this opinion be certified to the Superior Court in and for New Castle County.